ESTHER A. KRAMER *vs.* NEW YORK LIFE INSURANCE COMPANY.

Suffolk.    December 2, 1935. — February 24, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Proximate Cause. Insurance*, Accident. *Evidence*, Opinion: expert.

On expert opinion based on hypothesis warranted by the evidence, a jury could find that injury from a fall suffered by an insured person started into activity germs, otherwise harmless, present in everyone, which caused a septic condition from which he died, and that his death resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause" and did not result "directly or indirectly from . . . disease."

CONTRACT. Writ dated April 26, 1934.

The action was tried in the Superior Court before *Macleod*, J.

*F. H. Nash*, (*B. Potter* with him,) for the defendant.

*J. J. Krohn*, for the plaintiff.

PIERCE, J. This is an action of contract in which the plaintiff, as beneficiary of a life insurance policy issued by the defendant on the life of her husband, seeks to recover under a double liability provision contained in the following clause of the policy: "New York Life Insurance Company agrees to pay to Esther A. Kramer . . . Three Thou-

sand Dollars ($3,000), (the face of this policy) upon receipt
of due proof of the death of Morris Kramer, the Insured;
or double the face of this policy upon receipt of due proof
of the death of the Insured resulting directly and inde-
pendently of all other causes from bodily injury effected
solely through external, violent and accidental cause, and
that such death occurred within sixty (60) days after sus-
taining such injury. This Double Indemnity Benefit will
not apply if the Insured's death resulted from . . . physical
or mental infirmity; or directly or indirectly from illness or
disease of any kind." It is agreed that the face amount of
the policy has been paid. The policy was issued to Morris .
Kramer, who died on December 20, 1932, at the age of
forty-one.

The case was tried to a jury in the Superior Court. At
the close of all the testimony the defendant presented and
the judge denied, subject to the defendant's exception, a
motion for a directed verdict for the defendant. After in-
structions by the judge, to which no exceptions were saved
by either party, the case was submitted to the jury. The
jury returned a verdict for the plaintiff in the sum of $3,385.
After the verdict the defendant's motion for a new trial
was denied, subject to the exception of the defendant.
This exception has been waived. The controversy "comes
before this court on the defendant's exceptions (1) to rul-
ings on the admission of evidence by the trial justice and
(2) to the failure of the trial justice to grant its motion for
a directed verdict." The question here presented is whether
there were facts in evidence, "as distinguished from theories
or guesses," which support a verdict that the disease which
killed the insured resulted "directly and independently of
all other causes from bodily injury effected solely through
external, violent and accidental cause," and that his death
did not result from "physical or mental infirmity; or
directly or indirectly from illness or disease of any kind."

Respecting the motion for a directed verdict the evidence,
summarized in its aspect most favorable to the plaintiff,
warranted a jury finding of the following facts: On the
evening of December 13, 1932, the insured, a man over six

feet in height and weighing from two hundred seventy to two hundred eighty pounds, slipped on the back steps of his house and fell, sliding down several steps and landing so that he "was sitting on his left side." He picked himself up, entered his automobile, and drove his children to a school. Upon his return, his wife noticed that a boil on his right arm had broken and was bleeding. After washing off his arm, and protecting the ruptured boil with sterile gauze, the insured with his wife attended a wedding that evening. He appeared to be in good physical condition and made no complaints of being in pain. Similarly, on the following day he appeared to a witness who testified to be in good health. On the night of December 14, 1932, he could not sleep, was very restless, and suffered pain in the region of his left buttock. The next morning he remained in bed for a time, and when he arose he walked with a limp, dragging his left leg. Later in the same morning he went to his office. A friend, who also had a desk there, testified that he noticed that the insured was limping; that he complained of a "terrible" pain, and said that he must have hurt himself more than he realized when he fell "the other day." He was unable to sit straight but sat on his right side, without placing any weight on his left side. His friend drove him home, helped him out of his automobile, and assisted him to bed. The left buttock when exposed revealed a red area about the size of one's palm. This area was tender and when it was pressed the insured reacted as if in pain. From that time on the insured never left his house. At times his temperature was normal and at other times he had alternate periods of sweating and fever and chills. He grew worse during the next few days and continually indicated the pain in his left buttock as the cause of his suffering. On Friday and Saturday, December 16 and 17, 1932, swelling set in about the insured's knees. The next day he ran a high temperature and on Monday, December 19, his breathing became labored. He died on December 20, 1932.

Although the insured during his lifetime had boils periodically, the only boil he had at the time of his fall was

the one on his right arm. Several days before his death that boil had healed, and there was no redness in the area around it, nor did he complain of pain from that source. It is not disputed that the terminal causes of his death were as stated in the death certificate: septicemia, septic pneumonia, and septic arthritis. Prior to his last illness the insured had been very healthy and strong. He had had no illness other than the boils from which he suffered and which he himself treated.

Two doctors, who had not examined the insured in his lifetime, were called by the plaintiff and asked hypothetical questions based on the history of events as given above. Each was asked whether, assuming the facts to be as hypothetically stated, he was "able to form an opinion as to what this man [the insured] died of" and, over the defendant's objection and exception, answered subject to the defendant's objection and exception, "Yes." They then testified that the fall caused lowered resistance of tissues in the region of the left buttock, and the harmless organisms of the streptococcus class, which in a harmless form are present in everyone, and which were in the insured's blood stream, became active, and the infection spread through the blood stream to his knees, developing into septic arthritis, and to his lungs. These witnesses testified that the septicemia might have been brought about by staphylococcus germs from boils, as was contended by the insurer's medical witness, but in the opinion of the plaintiff's witnesses the symptoms of the insured were more properly referable to a conclusion of streptococcus infection. The alternately high and low temperatures and involvement of the joints, as well as other symptoms described in the question, are typical of streptococcus infection and are not consistent with staphylococcus infection because the last named infection, if it had started from boils, would have become active sooner than it did; that staphylococcus infection is marked by a uniformly high temperature with no long swings from one extreme to the other as was the case here. In addition these witnesses testified, and the jury could warrantably have found, that a staphylococcus infection would, if pres-

ent, result in abscesses which frequently break out in the outer skin, and had there been such an infection through the boil in the arm of the insured, the boil would not have healed as it did. There was other testimony treating in detail the probable course of the sequence of events leading to the death of the insured, and also testimony based on symptoms tending to show that the infection did not arise from germs coming into the body from without.

There is no dispute that the fall, if it did cause the death of the insured, constituted an "external, violent and accidental cause" within the meaning of the policy. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 35. *Collins* v. *Casualty Co. of America*, 224 Mass. 327, 330. The provision that the double indemnity provision would not apply if "death resulted . . . directly or indirectly from illness or disease of any kind," merely defines what is meant by "bodily injury effected solely through external, violent and accidental cause." *Mutual Life Ins. Co. of New York* v. *Still*, 78 Fed. Rep. (2d) 748, 750. *Leland* v. *United Commercial Travelers of America*, 233 Mass. 558. It is not necessary to determine whether the clause relating to disease as a cause is such a qualifying provision as to shift the burden of proof on that issue. *Coburn* v. *Travelers' Ins. Co.* 145 Mass. 226, 229, 230. *Badenfeld* v. *Massachusetts Mutual Accident Association*, 154 Mass. 77, 83. *Nichols* v. *Commercial Travellers' Eastern Accident Association*, 221 Mass. 540, 546.

It is admitted by the defendant that if the injury was the sole proximate cause of death, the death was covered by the double indemnity provision of the policy even though the injury produced a bodily condition recognized as a disease. *Freeman* v. *Mercantile Mutual Accident Association*, 156 Mass. 351. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 35. *Smith* v. *Travelers Ins. Co.* 219 Mass. 147, 148. *Metropolitan Life Ins. Co.* v. *Siebert*, 72 Fed. Rep. (2d) 6. *Preferred Accident Ins. Co. of New York* v. *Combs*, 76 Fed. Rep. (2d) 775. In these cases the disease is commonly referred to as a condition rather than a cause. If, however, there is an existing disease and an accident aggravating it, and death results, the death is not covered. *Bohaker* v. *Trav-*

*elers Ins. Co.* 215 Mass. 32, 35.   *Leland* v. *United Commercial Travelers of America,* 233 Mass. 558, 564.

The question which is mainly in controversy is whether the plaintiff introduced sufficient evidence to warrant the jury in finding that the fall sustained by the insured caused his death.   As is shown by the issues presented to the jury, the plaintiff's contention was that the accident caused otherwise harmless streptococcus germs present in the body of the insured to light up;   whereas the defendant contended that staphylococcus germs, coming from boils from which the insured suffered, caused his death, and that the causation was not affected by his fall.   As above set forth lay witnesses testified as to the physical appearance and condition of the insured, as well as to other symptoms exhibited by him.   Physicians called by the plaintiff and defendant on the basis of those facts gave contrary opinions as to how death occurred.   The hypothetical question on which the doctors were to give expert opinions on the issue involved was not much disputed.   The qualifications of the experts rested largely in the discretion of the presiding judge.   *Vineyard Grove Co.* v. *Oak Bluffs,* 265 Mass. 270, 279.   *Guinan* v. *Boston Elevated Railway,* 267 Mass. 526, 527–528.   *Coddaire* v. *Sibley,* 270 Mass. 41, 47.   The opinions were obtained through answers to hypothetical questions which involved facts that the jury could have found to be true.   *Flaherty* v. *Powers,* 167 Mass. 61, 64.   *Commonwealth* v. *Russ,* 232 Mass. 58, 73.   The fact that the plaintiff's medical experts did not examine the insured before his death nor consult with his physician after his death did not make their expert testimony inadmissible, since an expert may render an opinion based on facts assumed in the question put to him, which is supported by admitted facts or may be found by the jury to be supported by testimony of other witnesses.   *Hand* v. *Brookline,* 126 Mass. 324, 326.   *Commonwealth* v. *Russ,* 232 Mass. 58, 76.

Although the expert testimony of the physicians for the plaintiff was based on testimony which the jury could accept as sufficient evidence of the facts sought to be proved, the defendant contends that the evidence was in-

sufficient to enable the medical witnesses to render opinions from facts rather than mere guesses. Compare *Blanchard's Case*, 277 Mass. 413, 415. We think, however, the testimony of the plaintiff's experts was more than mere guesses. They testified that the symptoms exhibited by the insured, and testified to by other witnesses, were consistent with their opinion that the accident lit up a streptococcus infection, which germs, in a harmless form, are present in everyone and were present in the insured. They traced in detail the manner in which the symptoms caused them to arrive at the conclusion which they found. They supported these conclusions by showing how the symptoms exhibited by the insured were inconsistent with the theory or opinions of the defendant's experts, that death was caused by staphylococcus infection or by an infection through germs not present in an active form in the body of the insured at the time of the accidental injury. These opinions could have been found by the presiding judge to be based upon expert knowledge and observed facts which, if credited by the jury, would make it more probable that the death of the insured was caused in the way contended for by the plaintiff than in any other way. Slight evidence of the same type has been held to be sufficient to enable a jury to make a similar finding. *Sullivan* v. *Boston Elevated Railway*, 185 Mass. 602, 606. *Traverse* v. *Wing*, 256 Mass. 320, 322, 323. *Blanchard's Case*, 277 Mass. 413, 415. *Minns's Case*, 286 Mass. 459, 463–464.

We find no reversible error in the admission or exclusion of testimony which is argued in the defendant's brief. The case was properly submitted to the jury and the charge carefully covered the disputed issues without exception by either party.

*Exceptions overruled.*