JEANNETTE C. SHEEHAN *vs.* AETNA LIFE INSURANCE COMPANY.

Suffolk.  March 30, 1936. — February 24, 1937.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Insurance*, Accident, Notice. *Proximate Cause. Practice, Civil*, Requests, rulings and instructions. *Words*, "Accidental means," "Immediate notice."

The mere fact, that the operator of an automobile had suffered from a progressive sclerotic condition of the arteries of his heart for some time previous to an accident resulting in his death caused by his automobile suddenly turning from a dry road in fair repair when no other vehicle was in his vicinity, did not as a matter of law require a finding that the bodily ailment contributed to cause the accident.

Under a provision of a policy of accident insurance that failure to give a required "immediate" notice of death of the insured would not invalidate a claim "if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible," a finding that seasonable notice was given was warranted where there was evidence that the beneficiary justifiably did not know of the existence of the policy before the date of the giving of the notice.

A "ruling" which, literally, would have been erroneous because stating as a matter of law that which was required to be determined as a fact on the evidence, was not prejudicial error where it appeared that it was intended to express a general conclusion of law and fact and was warranted by the evidence.

CONTRACT.  Writ in the Municipal Court of the City of Boston dated November 14, 1934.

The action was heard by *Dowd*, J., who found for the

plaintiff in the sum of $15,000 and reported the action to the Appellate Division. The report was ordered dismissed. The defendant appealed.

The case was submitted on briefs.

*R. H. Willard & A. S. Allen*, for the defendant.

*J. E. Chisholm*, for the plaintiff.

DONAHUE, J. The plaintiff is the beneficiary named in a policy of accident insurance issued by the defendant which insured her husband "against loss resulting directly and independently of all other causes, from bodily injuries effected . . . solely through accidental means" and provided that for loss of life thus caused the insurer would pay the plaintiff $15,000. The policy also contained the provision: "This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, by bodily or mental infirmity . . . or by any other kind of disease . . . nor shall it cover suicide, sane or insane . . . ." The insured received injuries on September 3, 1934, while driving his automobile and died on the following day.

The trial judge in the Municipal Court of the City of Boston found for the plaintiff, filed a statement of findings of fact and reported to the Appellate Division his rulings and his refusals to rule as requested by the defendant. The Appellate Division ordered the report dismissed.

The main contentions of the defendant are: (1) that the only rational inference permissible by the evidence is that the physical condition of the insured caused or directly contributed to cause his death and hence that there was not such an accident as is covered by the policy, and (2) that "immediate notice" of the death of the insured was not given to the defendant within the requirements of the policy.

1. There was testimony given by lay witnesses and by physicians called by the defendant which, if believed, would tend to support the contention of the defendant that the physical condition of the insured played a causal part in the accident. This testimony need not here be related. It was for the trial judge to determine whether

credit should be given to this testimony. He manifestly did not give it credit. There was, however, other evidence which warranted the judge in finding that the death of the insured was effected solely through accidental means and that the death was a loss covered by the policy.

The plaintiff introduced evidence that on the morning of September 3, 1934, the insured, a physician living in Stoneham in this Commonwealth, was seen by witnesses driving alone in his automobile on the right hand side of a public highway in Winchester at the rate of speed of thirty-five to forty-five miles an hour, that the speed of the automobile slackened slightly for an instant, and that the automobile then turned suddenly and "shot across" the street to its left, went off the road and collided with a tree while going at the rate of thirty-five to forty-five miles an hour. The insured received serious bodily injuries. Immediately after the collision he was unconscious but soon regained consciousness. He was removed to the Winchester Hospital and died there on the evening of the following day. The highway was dry and in a fair state of repair and there was no other vehicle in the immediate vicinity of the scene of the accident.

The foregoing evidence taken by itself would warrant the conclusion that the physical injuries received by the insured when his automobile struck the tree came by "accidental means" within the meaning which must be given to those words in the policy. The phrase "'accidental means' is used in the contract of insurance in its common significance of happening unexpectedly, without intention or design." *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 33–34. *Sontag* v. *Galer*, 279 Mass. 309, 312, and cases cited. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440, 444–445.

The death certificate stated the cause of death to be "shock, following automobile accident. Collided with a pole. Comminuted fracture left knee and femur." The judge found that the insured died of pneumonia induced by traumatic shock following the accident but also found that he would not have died but for injuries sustained in

the accident. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440, 444–445, and cases cited. There was medical testimony supporting this finding. The judge found that "for a number of years previous to the date of the accident the insured had suffered from a bodily ailment, progressive in its nature, to wit, a sclerotic condition of certain arteries of the heart." But he also found that this was not the cause of the automobile veering across the street and colliding with the tree and that "the efficient proximate cause which set in motion the causal agencies which brought about the death of the insured was the accident, and his bodily ailment was but an existing condition." There was medical testimony which justified the conclusion that the insured's heart condition was not a cause of the automobile leaving the road or of the insured's death.

On all the evidence the finding was warranted that the accident was the proximate and the sole cause of the death of the insured.

2. The policy provided that: "In event of accidental death immediate notice thereof must be given to the Company . . . by or in behalf of the Insured or Beneficiary, as the case may be . . . . Failure to give notice within the time provided in this Policy shall not invalidate any claim if it shall be shown not to have been reasonably possiblé to give such notice and that notice was given as soon as was reasonably possible." The defendant contends that notice was not given seasonably within the requirements of the policy.

The requirement in an insurance policy that "immediate" notice of loss be given means that such notice "shall be sent as soon as the exercise of reasonable diligence will enable the assured to send it." *Parker* v. *Middlesex Mutual Assurance Co.* 179 Mass. 528, 530. *Smith* v. *Scottish Union & National Ins. Co.* 200 Mass. 50, 53–54. *Bennett* v. *Aetna Ins. Co.* 201 Mass. 554, 556. The meaning is substantially the same when the requirement is that notice of death under an accident policy be sent "as soon as may be possible." *Everson* v. *General Accident, Fire & Life Assurance Corp. Ltd.* 202 Mass. 169, 174. In *Wilcox* v. *Massa-*

*chusetts Protective Association, Inc.* 266 Mass. 230, 237, where the language of the policy respecting the time for sending notice of death is identical with that in the policy in the present case, it is said, it "is a question of due diligence in sending the notice with reasonable promptness in the circumstances of each case."

Pertinent circumstances with respect to the giving of notice in the present case are here briefly summarized: The plaintiff, at the time of her husband's death, was living in California and had been living apart from him for over a year. She was informed by telephone of his death on the evening it occurred, September 4. The next day she started east by aeroplane arriving at New York late on September 6 and at Boston on the morning of the funeral, September 7. There was evidence which would warrant the finding that on September 8 she returned to New York. On September 10, which was six days after the death and three days after the funeral of the insured, the plaintiff's attorney first learned, from an employee of the defendant, that there was in force a policy of accident insurance issued by the defendant to the insured in which the plaintiff was named as beneficiary. He thereupon gave to the defendant oral notice of the death of the insured. The policy did not require that such a notice should be given in writing. Counsel for the defendant stated at the trial that no question was raised as to the sufficiency of the phraseology of the oral notice. Its only contention is that notice was not shown to have been seasonably given. A formal written notice of the death was given to the insurer by the plaintiff's attorney on September 14.

The insured for a long time had a policy of accident insurance issued by the defendant. It was renewed yearly upon acceptance by the defendant of the payment of an annual premium. At the end of each year covered by the policy the company upon payment of a premium determined whether or not the insurance would be renewed for another year.

While the plaintiff was living with her husband she drew checks in payment of his bills including the payment of

premiums on various policies of insurance of different kinds which he held, among them checks for premiums on an accident policy issued by the defendant. She testified that she never read any such policy and it did not appear that she knew who was named as beneficiary therein. She had been living apart from her husband since June, 1933, and in the fall of that year there were legal proceedings between them. It did not appear that she had knowledge or means of knowledge of the renewal of an accident insurance policy by the defendant for the year in which her husband met his death. Until September 10, 1934, neither she nor her attorney had possession of the policy of accident insurance issued by the defendant or any receipt or evidence showing a renewal for that year. She testified that she first knew that an accident policy issued by the defendant was in existence after the death of the insured when she was told of that fact by her attorney.

On all the evidence the finding was warranted that she did not know there was in force in 1934 an accident policy in which she was named as beneficiary until after September 10. Her ignorance of that fact was a circumstance to be considered on the question whether she used due diligence in giving notice to the company of the insured's death. *Verelst's Administratrix* v. *Motor Union Ins. Co. Ltd.* [1925] 2 K. B. 137. *Federal Life Ins. Co.* v. *Holmes' Committee*, 232 Ky. 834. *Metropolitan Life Ins. Co.* v. *People's Trust Co.* 177 Ind. 578, and cases cited. *Solomon* v. *Continental Fire Ins. Co.* 160 N. Y. 595. We think the evidence justified the conclusion that the plaintiff used due diligence under all the circumstances in giving the notice with reasonable promptness.

3. The only request by the defendant for a ruling on the matter of giving notice was: "Upon all the evidence the plaintiff cannot recover, because immediate notice of the death of . . . [the insured] was not given to the defendant company within the meaning of the policy." The trial judge disposed of this request by the notation "Not granted; I do not so find." The finding filed by the judge stated: "I rule that the oral notice of death on September 10, supple-

mented with the written notice of September 14, was on the evidence within the terms of the policy." The question whether due diligence was exercised by the plaintiff in giving notice of the death was a question of fact. *Smith* v. *Scottish Union & National Ins. Co.* 200 Mass. 50. A ruling as matter of law that the notice was within the terms of the policy could not rightly be made. But, in passing on the defendant's request for a ruling in the manner above set out, the judge manifestly must have made the finding of fact that immediate notice of death was given as required by the policy. The evidence warranted such a finding. We think that his purported "ruling" was intended to express a mere general conclusion of fact and law (*Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349, 353–354; *Patterson* v. *Ciborowski*, 277 Mass. 260, 267; *Goldston* v. *Randolph*, 293 Mass. 253, 256; *Harding* v. *Broadway National Bank of Chelsea*, 294 Mass. 13, 20; compare *Pearson* v. *O'Connell*, 291 Mass. 527), and that there was no prejudicial error.

*Order dismissing report affirmed.*