MAE E. BARNETT & another *vs.* JOHN HANCOCK MUTUAL
LIFE INSURANCE COMPANY.

Worcester.  September 26, 1939. — December 28, 1939.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Insurance*, Accident; Proof of loss; Life: double indemnity. *Proximate
Cause. Practice, Civil*, Question of law or fact.

A finding that the death of an insured was, within the policy, "caused
solely by external, violent and accidental means . . . and that such
death occurred . . . as a direct result thereof, independently and ex-
clusive of all other causes" and "was not caused directly or indi-
rectly by disease," was warranted by evidence that his physical con-
dition was so weakened by a laceration of the forehead and concussion
sustained in an automobile accident that pneumonia developed about
a month later from germs, either latent in his body at the time of the
accident or entering it thereafter, which would have been harmless
had he been in good condition, and that the pneumonia produced
heart and brain infection from which he died three months after the
accident.
Statement in writing to the insurer by the beneficiary of a life insurance
policy and by physicians attending the insured, an undertaker's cer-
tificate, and a detailed letter to the insurer by an insurance broker
acting for the beneficiary, taken together, in the circumstances could
be found to be sufficient to inform the insurer, and to constitute "due
proof," that the death of the insured, though immediately produced
by disease, was caused "solely" and directly by an accident preced-
ing the disease within a double indemnity provision of the policy and
that the beneficiary was claiming the double indemnity.
In an action to recover a double indemnity payable under a life insur-
ance policy in case of death caused solely and directly by accidental
injury and occurring within ninety days thereafter, with evidence of
proofs of death furnished the insurer which stated as the date of an
accident sustained by the insured both a date more than ninety days
before his death and a date within the ninety days, and which further
presented a question of fact whether they sufficiently informed the
insurer that the death was so caused and that the beneficiary was
claiming the double indemnity, it was reversible error to instruct the
jury that if they found that the proofs "set up the proper date as"
the later date, the proofs were "good."

CONTRACT.  Writ in the Superior Court dated June 14,
1938.

There was a verdict for the plaintiff in the sum of $1,590.50 at the trial before *Dowd*, J. The defendant alleged exceptions.

*C. W. Proctor*, for the defendant.

*D. Whitcomb*, for the plaintiff.

RONAN, J. This is an action of contract to recover for accidental death under a double indemnity provision in a life insurance policy, which provided that the defendant, "Upon receipt of due proof of the death of the insured . . . caused solely by external, violent and accidental means, of which there is a visible wound or contusion on the exterior of the body (except in case of drowning or of internal injuries revealed by an autopsy), and that such death occurred . . . as a direct result thereof, independently and exclusive of all other causes, . . . and provided further that the death of the Insured was not caused directly or indirectly by disease or bodily or mental infirmity . . ." would pay a certain sum. The insured was injured on February 4, 1938, when the automobile which he was operating skidded along the road and into a tree. He sustained a laceration two and one half inches long, on the right forehead, which was treated at a hospital where he was taken and in which he was confined for nine days. He spent the next ten days at home. Thereafter he began his duties as a travelling salesman on February 24, 1938, working two hours on that day and two hours on February 25 and February 28, 1938. He quit work on March 1, 1938, on account of illness. On March 18, 1938, he was taken to a Worcester hospital where he stayed until April 8, 1938; he was then taken to a Boston hospital and died there on May 5, 1938. The jury returned a verdict for the plaintiffs. The case is here upon the defendant's exception to the denial of its motion for a directed verdict, to the refusal of the judge to grant certain requests for instructions, and to portions of the charge.

There was evidence that the insured was thirty-five years of age, and that he was strong, robust and in good physical condition when he was injured on February 4, 1938. At the hospital where the laceration on his forehead was first

treated, the attending surgeon believed that he had sustained a fairly serious concussion, and when he saw him again, late in February, he looked poorly, had lost considerable weight, and had no memory of the accident. Beginning March 1, 1938, he was confined to his home on account of pneumonia, which developed into empyema, an infection of the lining of the lung that caused the formation of pus between the lung and the chest wall. He was taken to a Worcester hospital. His condition did not improve, but indicated that he was suffering from an infection located in some part of his body other than his chest. There was testimony that bacteria, generated by the empyema, reached the brain tissue and localized at a point where the resistance of the tissue had been lowered by the accident and formed a brain abscess, and that from the brain as a focal point the bacteria were transmitted to the heart where it caused endocarditis. There was also testimony that the bacteria from the empyema were disseminated into the blood stream and reached both the brain and the heart. The jury could find that the infection of both these organs was caused by the empyema which resulted from pneumonia.

The question is whether this latter disease can be attributed solely and exclusively to the automobile accident. The insured was not suffering from this disease at the time of the accident. Pneumonia bacteria get into the system through the respiratory tract where they may remain harmless for days or months until a person's resistance is so lowered that they can impart themselves to the tissues and set up this disease. If, at the time of the accident, pneumonia germs were in his system and, as a result of the accident, his power of resistance was so lowered that these germs became active and developed into pneumonia, then the jury were warranted in finding that the accident alone was the cause of this disease and that the death of the insured was "caused solely by external, violent and accidental means . . . independently and exclusive of all other causes." *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32. *Collins* v. *Casualty Co. of America,* 224 Mass. 327. *Kramer*

v. *New York Life Ins. Co.* 293 Mass. 440. *Ballam* v. *Metropolitan Life Ins. Co.* 295 Mass. 411.

It was also open to the jury to find that, after the accident, the insured, as he went about his business, exposed himself to the bacteria which "are circulating around everywhere"; and that, on account of his weakened physical condition resulting from the accident, the bacteria developed into pneumonia. The fact that the bacteria entered the body of the insured after the accident would not prevent them from being the efficient and active cause of the damage they wrought if, upon the evidence, such damage was directly traceable to the accident. *Larson* v. *Boston Elevated Railway,* 212 Mass. 262. *Charles* v. *Boston Elevated Railway,* 230 Mass. 536. *Binns* v. *Blake,* 289 Mass. 70. *Wallace* v. *Ludwig,* 292 Mass. 251. The jury could find that one of the effects of the accident was to render the insured peculiarly susceptible to attack by bacteria which, but for the accident, he would have successfully warded off; and that the change in his general physical condition, due to the accident, constituted a predisposing tendency to bacterial infection. The presence of bacteria in the respiratory tract could be found to be a mere condition as long as the insured possessed his normal and usual power of resistance. It could also be found that their virulence was directly and solely attributable to the accident, and that the resulting pneumonia was within the coverage of the policy. The existence of such a malady would not be due to a cause different from or independent of the accident. A disease entirely caused by an accident is, within contemplation of law and within a proper construction of the policy, a part of the injury incurred by the accident. *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351. *Mogé* v. *Société de Bienfaisance St. Jean Baptiste,* 167 Mass. 298. *Hatch* v. *United States Casualty Co.* 197 Mass. 101, 104. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440. *Ballam* v. *Metropolitan Life Ins. Co.* 295 Mass. 411. *Sheehan* v. *Aetna Life Ins. Co.* 296 Mass. 535. *Scanlan* v. *Metropolitan Life Ins. Co.* 93 Fed. (2d) 942.

On all the evidence including the medical testimony which the jury could have believed, they were warranted in finding that the accident alone was the proximate cause of his death. There was no error in refusing to grant the defendant's motion for a directed verdict. *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351. *Sheehan* v. *Aetna Life Ins. Co.* 296 Mass. 535. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440.

The defendant contends that the plaintiffs did not furnish it with due proof of a death resulting in the manner described in the double indemnity provision of the policy. The proof consisted of a statement from one of the plaintiffs, a statement from each of the two physicians who attended the insured, a certificate from the undertaker and a letter from one Nester, who, the jury could find, was acting as the agent of the plaintiffs. The statement of one of the plaintiffs was made upon a blank form apparently furnished by the defendant. All the questions were answered. There was no mention of the accident. There was no question on the blank form as to the cause of death and nothing therein sought information upon the subject. The·statement of one of the attending physicians showed that the death was due to "Brain abscess bacterial·endocarditis," complicated by "Empyema and pneumonia [which] preceded bacteremia and followed an accident in Jan., 1938," and that the health of the insured was first impaired in "Jan., 1938." The statement of the second physician disclosed the fact that the insured had been treated in a Worcester hospital, in February, for a concussion of the brain, and that his health was first impaired on February 4, 1938. Nester (an insurance broker) wrote the company that "The beneficiary is claiming Double Indemnity under policy No. 1299546 based on the fact that the insured sustained a brain concussion in an automobile accident on February 4, 1938, which it is claimed was a prime contributory cause to contraction of pneumonia at a later date, which resulted in empyema and other ailments resulting in the death of the insured." This letter gave the details of the accident, a fairly complete medical history of

the case, including the names of the attending physicians, the various hospitals where the insured was confined, something concerning the medical treatment, the date of his death and what the autopsy disclosed. The letter also informed the defendant that the insured had received payments under the workmen's compensation act, on account of the injuries sustained in the automobile accident and during the period of hospitalization necessitated by the pneumonia and other complications. It also advised the defendant that three of the attending physicians had made oral statements which indicated "that the accident was a contributory cause to the development of pneumonia and ensuing complications, due to the weakened resistance of the insured because of the brain concussion."

The plaintiffs were required to furnish the defendant with due proof that the death of the insured resulted solely and exclusively from an accident. The performance by them of this provision of the policy must be shown — as there is no evidence of waiver — if recovery is to be had. *Maskas* v. *North American Accident Ins. Co.* 279 Mass. 523. *Larsen* v. *Metropolitan Life Ins. Co.* 289 Mass. 573. *Sherman* v. *Metropolitan Life Ins. Co.* 297 Mass. 330. The purpose of the proof is to apprise the defendant that a death has occurred under such circumstances that the indemnity has become payable. The facts supplied must be sufficient to meet the policy requirements as to proof. The proof must purport to be the statement of a claim, by one upon another, purporting to be made on account of the only contractual relationship existing between them. It is true that the beneficiaries had a claim under the policy for payment for an ordinary death, but it is also true that the proof purported to set forth a claim for double indemnity. The three statements and the letter constituted the proof and should be read together. So construed it could have been found that they furnished the defendant with sufficient information that the insured had been involved in an accident which, according to his physicians, caused various diseases resulting in his death. The statement in the letter that these diseases were a prime contributory cause of death, if inaccurate,

might have been found to be harmless, in the face of the positive assertion that double indemnity was claimed, which the defendant must have known could not be paid unless the accident independently of all other causes was the sole cause of death. Such proof is to be fairly construed, and the plaintiffs could explain and, if necessary, correct the statement as to contributory cause, provided enough remained in the proof to bring the claim within the terms of the policy. The proof could be found to have contained the facts essential to a valid claim, and the characterization of the diseases as a contributory cause did not as matter of law render the proof insufficient. *Cluff* v. *Mutual Benefit Life Ins. Co.* 99 Mass. 317, 324. *Noyes* v. *Commercial Travellers' Eastern Accident Association,* 190 Mass. 171, 181. *Barker* v. *Metropolitan Life Ins. Co.* 198 Mass. 375. *Traiser* v. *Commercial Travellers' Eastern Accident Association,* 202 Mass. 292. *Burke* v. *John Hancock Mutual Life Ins. Co.* 290 Mass. 299.

The policy insured against death, caused by accidental means, which are evidenced by a visible wound or contusion on the exterior of the body, except where signs of internal injuries are revealed by an autopsy. The requirement of objective evidence of violence was to protect the company against claims that could not fairly be attributed to applications of force to the body of the insured. The company is not deprived of such protection either as a practical matter or as a matter of construction of its policy if there are internal injuries resulting from the accident which are disclosed by an autopsy. The fact that the laceration on the insured's forehead was not mentioned in the proof cannot avail the defendant, when the proof stated that the autopsy disclosed that "death actually occurred on account of poctinal endocarditis and multiple brain abscesses," which could be understood in view of the other statements contained in the proof to be the ensuing complications due to the brain concussion sustained in the automobile accident. If "the internal injuries, which cause death, are revealed by an autopsy, it is immaterial whether there be a visible contusion or wound upon the exterior of the body." *Warbende* v.

*Prudential Ins. Co.* 97 Fed. (2d) 749, 754. See *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351; *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1.

The judge instructed the jury that due proof had been furnished if the jury found that the accident happened on February 4, 1938, as stated in the letter of Nester.* Since there seemed to be no serious dispute as to the date of the accident or that the correct day was set forth in Nester's letter, the practical effect of this instruction, in substance, was that the proof required had as matter of law been furnished. This was error. The proof contained two different dates of the accident. If the accident occurred in January, 1938, as set forth in the statement of one of the attending physicians, then there could be no recovery because under the policy double indemnity was not payable unless death occurred within ninety days of the accident. The further statement of this physician that certain diseases followed an accident in January, 1938, might be reasonably understood to mean a sequence of events or that the diseases had a causal connection with the accident. It cannot be said that the proof did not set out sufficient facts to show that the death was due solely to the accident even though the diseases are referred to as a contributory cause. Considering the proof in its entirety, we think it presented a question of fact whether it could be fairly understood as setting forth the occurrence of the death of the insured in such circumstances that the insurer could reasonably be expected to pay the indemnity. *Traiser* v. *Commercial Travellers' Eastern Accident Association,* 202 Mass. 292. *Nichols* v. *Commercial*

---

* The judge's charge on this subject was as follows: "There is, in this case, of course, a requirement that a proof of loss shall be submitted as a condition precedent to a right to bring an action in this court. Well, such a particular proof has been filed here, but there is some dispute as to the evidence as to when this accident occurred. In the letter of Dr. Overholt the statement was made by him that the accident occurred sometime in the latter part of January. The letter of the last witness, Mr. Nester, which was sent to the company, showed that the accident occurred on February 4. If, on the evidence, you find this accident occurred previous to February 4, then I will have to rule as a matter of law that that is not good notice and that you have to bring in a verdict for the defendant. But, if, on the other hand, you find that the notice set up the proper date as February 4, the letter sent by Mr. Nester, then I have to rule that is good notice. Then you consider the action is properly before you and take it up and bring in your verdict accordingly." — REPORTER.

*Travellers' Eastern Accident Association*, 221 Mass. 540. *Eaton* v. *Globe & Rutgers Fire Ins. Co.* 227 Mass. 354, 364. See *Nashua River Paper Co.* v. *Lindsay*, 249 Mass. 365; *Guthrie* v. *J. J. Newberry Co.* 297 Mass. 245. We think the case is distinguishable from cases in which a prerequisite for showing a death or accident came within the policy was omitted from the proof or where the proof stated facts that showed that the claim did not come within the coverage. *Page* v. *Commercial Travellers' Eastern Accident Association*, 225 Mass. 335. *Thompson* v. *United Casualty Co.* 296 Mass. 507. *O'Neil* v. *Metropolitan Life Ins. Co.* 300 Mass. 477. *Goldman* v. *Commercial Travellers' Eastern Accident Association*, 302 Mass. 74.

As the other matters to which exceptions were taken may not arise at the next trial, we do not consider them; but because of the error in the instructions given upon the sufficiency of the proof of death, the entry must be

*Exceptions sustained.*