MOLKENBUHR, J.
This cause is before the court after the granting of a rehearing. Since the facts are set forth in the original opinion, there is no need of setting them forth again.
Appellant contends that Lieutenant Stokes did not receive, through external, violent and accidental means, bodily injuries which, independently of all other causes, resulted in his death, and, secondly, that the policy excludes recovery where death is caused wholly or in part by mental or bodily infirmities or disease.
An examination of the briefs in the case of Brooks v. Metropolitan Life Ins. Co., 27 Cal.2d 305 [163 P.2d 689], and Happoldt v. Guardian Life Ins. Co., 90 Cal.App.2d 386 [203 P.2d 55], divulges the fact that the identical points and almost the same authorities were presented there as in this case. After the decision in the Brooks case, counsel for Metropolitan Life and counsel for Pacific Mutual Life (as amici curiae) petitioned the court for a rehearing, requesting the court to delete the last four paragraphs of the opinion, regarding interpretation of the two clauses, claiming it was obiter dicta and if left to stand would raise an irreconcilable conflict with the California decisions of 25 years, and referred to the following cases in particular: Rock v. Travelers Ins. Co., 172 Cal. 462 [156 P. 1029, L.R.A. 1916E 1196] ; Clarke v. New Amsterdam Casualty Co., 180 Cal. 76 [179 P. 195]; Kellner v. Travelers Ins. Co., 180 Cal. 326 [181 P. 61]; Price v. Occidental Life Ins. Co., 169 Cal. 800 [147 P. 1175] ; Ogilvie v. Aetna Life Ins. Co., 189 Cal. 406 [209 P. 26, 26 A.L.R. 116]; Bennetts v. Occidental Life Ins. Co., 39 Cal.App. 384 [178 P. 964]; Horton v. Travelers Ins. Co., 45 Cal.App. 462 [187 P. 1070]. These were all before the court before it rendered its decision; they are likewise in the briefs in the present case. In the Brooks case, appellant argued that the decision completely disregarded the plain, simple language of the contract which provided for death benefits when the insured’s death was the “result of bodily injuries caused, directly or *934 indirectly, independent, of all other causes, by violent and accidental means” and specifically excluded death “caused, wholly or partly, directly or indirectly, by disease or bodily or mental infirmity.”
The same questions were before the court in the Happoldt case, namely (1) Did death result, directly or indirectly, independent of all other causes, effected solely through external, violent and accidental means; and (2) Did death result directly or indirectly or in part from bodily infirmity or disease. Appellants there also referred to what they said was the plain language of the contract and contended that the court in so interpreting the policy violated the Fourteenth Amendment to the Constitution (right of freedom of contract).
Nevertheless the courts in both cases interpreted the language of the policy under both provisions, “independent of all other causes ’' and 1 ‘ caused in whole or in part by disease ’ ’ to mean that if the accident sets in motion a chain of events that results in death, and such accident is the proximate cause of death, the insured is covered, and notwithstanding any prior existing disease may have contributed to the death.
Here the evidence shows that the decedent, aged about 53 years, was in good health prior to the fire; that no one knew that he had any heart disease; that the fire he fought in line of duty was a major one of especially high temperature, of intense, hot, noxious, black smoke containing carbon monoxide; that he “took a spill”; that he perspired freely; that he “took a beating”; that he dragged a heavy hose; that he “had a bellyful of smoke”; that he complained of pain in his chest and lungs; that he overexerted himself; that he suddenly went down on his knees; that he exerted a great deal of energy; that he inhaled carbon monoxide; that he was under great exertion dragging a 3-inch hose through debris, water and various obstructions. Medical testimony developed that the inhaling of hot smoke and carbon monoxide may damage the heart muscles; that inhaling hot smoke increased respiration and the work of the heart; that if carbon monoxide was present of sufficient concentration to be harmful, one of two things would happen—death immediately, or damage to the heart; that the smoke was a factor precipitating death; that because of various stresses and strains at the fire he damaged his coronary artery.
These events, in our opinion, after allowing for all reasonable inferences to be drawn therefrom, substantially sustain the finding that the decedent suffered a heart attack caused *935 by ancl while fighting the fire; that these events definitely set in progress a chain of events which led to his death and was the sole and proximate cause of death; that his death was caused by external, violent and accidental means, independent of all other causes. Who is to determine how long Stokes would have lived had he had his normal and usual powers of resistance ? So far as anyone knew, as of the day of the fire he was well and healthy and actually performing his duties as a fireman.
It is our opinion that it is now the settled law of this state since the Brooks decision that a recovery may be had under the provisions of a policy providing for payment where “death is caused by external, violent and accidental means, independent of all other causes” and “excluding payment where death is caused wholly or in part by disease” if the accident is the proximate cause and sets in motion a chain of events leading directly to death, notwithstanding the fact that a preexisting disease contributed to the death. Since the court here found as a fact that the accident was the prime and moving cause of death (the preexisting heart disease only contributing) it cannot be said as a matter of law, in interpreting the provisions of the policy and the evidence, that the death of Stokes was caused in whole or in part by any preexisting heart disease. As stated above, counsel in the Brooks and Happoldt cases endeavored to avoid liability on the same grounds as appellant here: namely, that death was not caused by the accident, independent of all other causes, but was caused in part by a preexisting heart disease. (See, also, Barnett v. John Hancock Mut. Life Ins. Co., 304 Mass. 564 [24 N.E.2d 662, 126 A.L.R. 608] ; Handley v. Mutual Life Ins. Co., 106 Utah 184 [147 P.2d 319,152 A.L.R. 1278]; Guardian Life Ins. Co. v. Robison, 278 Ky. 678 [129 S.W.2d 192].)
Appellant cites Towey v. New York Life Ins. Co., 27 Wn.2d 829 [180 P.2d 815] in its brief for rehearing, to the effect that the proximate cause rule does not apply in construing the exclusion clause (“caused in whole or in part by disease”). That holding, in our opinion, is contrary to the Brooks and Happoldt cases, which we are bound to follow. Two interesting features are developed from the reading of the Towey case and Evans v. Metropolitan Life Ins. Co., 26 Wn.2d 594 [174 P.2d 961], which the court in the Towey case relied upon for the statement of the proximate cause rule. The first is that the court in the Towey case in the *936 forepart of the decision holds exactly the same way as the Brooks ease in interpreting the provision that the company will pay if “death is caused, independent of all other causes, through external, violent and accidental means”; namely, that the proximate cause rule applies. The second, and more interesting feature, is that the contract in Evans v. Metropolitan case on which the court in the Towey ease relied as authority, specifically and definitely provided that the company would not pay if death was caused “OR CONTRIBUTED,” directly or indirectly, wholly or partially, by disease. The policy in the Towey case morever did not use the word “Contribute”—the word used was “Results”—the same as in the Happoldt case. Whether this was pointed out to the court in the Towey case we cannot tell; had it been, and the court had before it the ease of Scanlon v. Metropolitan Life Ins. Co., 93 F.2d 942, and the other authorities relied upon by our Supreme Court in the Brooks case, and the Brooks decision itself, the final result in the Towey ease might have been different.
In Scanlon v. Metropolitan Life Ins. Co., supra, at pages 945 and 946, relied upon in the Brooks case, we find the following language concerning the interpretation of the words “caused in whole or in part by disease”:
“While the bodily infirmity need not be the sole cause of the death to defeat recovery under this policy, it is well settled that the “cause” as here used, either sole or partial, refers to something different than a disease or affliction rendered more serious by the consequences of the accident.
“One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is nevertheless the accident, and recovery cannot be avoided or evaded.”
Rebenstorff v. Metropolitan Life Ins. Co., 299 Ill.App. 71 *937 119 N.E.2d 420], discusses the two provisions-—‘ ‘ caused wholly or partially” and “directly or indirectly, independent of all other causes,” and holds that the proximate cause rule applies in interpreting both provisions.
In Police & Firemen’s Ins. Assn. v. Blunk, 107 Ind.App. 279 [20 N.E.2d 660], the same two provisions were again under consideration. There the court held that the inhalation of smoke, plus exertion, was the proximate cause of death and the company was liable; that the inhaling of black, hot, noxious smoke containing carbon monoxide affected the nervous mechanism of the heart; that although the insured died of a coronary occlusion, the exposure to the hot, dense, oily smoke was a factor which set off the coronary occlusion; that when a person is subject to such conditions, respiration increases and the heart is required to do more work and is under greater strain. Here Stokes inhaled smoke and exerted himself, and the testimony of the doctor was to the effect that smoke was a factor in the cause of death.
In United States Fid. & Guar. Co. v. Dowdy, 203 Okla. 207 [219 P.2d 215], the evidence was that the fireman was overcome by heat and smoke at a fire; the policy provided for recovery for injuries “effected independently and exclusively of all other causes through external, violent and accidental means.” The court there held that the insured was covered. In the instant case the evidence showed that Stokes perspired heavily, inhaled smoke, was overcome by all of the conditions and was under great exertion.
In Metropolitan Casualty Ins. Co. v. Fairchild, 215 Ark. 416 [220 S.W.2d 803], a workman while engaged in thawing a frozen valve on a tank and standing with his left foot on a rod and leaning in a strained position with most of his weight' on his left arm, reached over with a blowtorch; in so doing he strained himself and suffered a coronary occlusion. The court held that the occlusion was the result of accidental means and that since the accident was the proximate cause of death, the insured was covered, notwithstanding an existing disease did contribute to his death. There is no question here but that Stokes strained himself.
In Continental Casualty Co. v, Bruden, 178 Ark. 683 [11 S.W.2d 493, 61 A.L.R. 1192], the insured while engaged in the performance of his duties as a machinist’s helper, in putting grease in the cellar of an engine while in a pit under the engine became overheated and died shortly thereafter; he had been under a very hot firebox and as he came out *938 ho. said, “Brother Coley, I got it,” and wiped his face. It was held that such heat prostration was covered under the terms of a policy providing for payment in the event of loss of life resulting from injury independent of all other causes, etc. Here Stokes became overheated, and moreover said, “I got a bellyful of smoke.”
In Dalbey v. Equitable Life Assur. Soc., 105 Mont. 587 [74 P.2d 432], the deceased, a fireman, was overcome by dense smoke and fumes, the effects of which proximately caused his death; defendant claimed death was not from accident. In that case the evidence disclosed that the conditions of the fire were unusual; that the smoke was dense; that the decedent became asphyxiated while shifting a hose; that it was a rural fire such as the department was rarely called upon to combat, necessitating the unreeling and laying of hose by hand, and, as the court stated, “a fact to be considered, since it called for extra exertion on the part of the deceased. ’' The court held that the deceased was indisputably overcome by smoke and fumes, the effects of which proximately caused liis death, and was therefore covered.
In Stuart v. Occidental Life Ins. Co., 156 Ore. 522 [68 P.2d 1037], the evidence was that the deceased was a fireman; that while engaged in fire fighting he was accidentally enveloped in smoke, soot and fumes in such a manner that he was unable to get away without suffering injury; that he subsequently contracted pneumonia from which he died. It was held that he died from an injury effected solely through accidental means.
Appellant at the argument on rehearing referred to Johnson v. Business Men’s Assurance Co.,-Wn.2d- [228 P.2d 760]. That case, in our opinion, merely holds that exhaustion of and by itself was not covered by the policy.. There the court pointed out that there was absolutely no evidence to support a finding that death was caused by such accidental means as inhaling smoke, encountering heat, or any other deleterious effects of the fire; that there was no slip, fall nor unforeseen circumstance. Moreover, the court said that the act of Johnson was a deliberate one on his part. Here Lieutenant Stokes inhaled hot smoke containing carbon monoxide, encountered extreme heat, “took a spill,” for some reason went down on his knees, and his exposure to any hidden danger was not voluntary.
Appellant refers to authorities denying recovery against death effected solely through external, violent and accidental *939 means where the injury was sustained in cranking an automobile; assisting in carrying a door weighing 86 pounds ; climbing, with baggage, a long flight of steps in a rarefied atmosphere; raising and lowering himself by the arms; and similar acts. The rule in those eases is stated in Carswell v. Railway Mail Assn., 8 F.2d 612 (cranking an automobile) as follows:
“One who voluntarily undergoes physical exertion and nothing unexpected or unintended happens while he is doing so, the fact that such exertion unintentionally and unexpectedly causes injury does not make the means whereby such injury is caused—namely, the voluntary exertion—accidental. The physical injury caused by voluntary exertion or strain which is unaccompanied by anything which is involuntary, unforeseen and unusual is not the result of external, violent and accidental means.”
It cannot be said that this rule is applicable to the facts in this case, because the Brunton fire developed hidden, unknown and unexpected dangers, and his exposure to that which happened was not voluntary. It cannot be said that Stokes intended to produce that which happened.
The finding by the court as to the proximate cause of death was one of fact for the trial court. The evidence definitely and substantially sustains the fact that the fire, with all its attendant circumstances, was the proximate cause of death. If appellant would avoid liability in cases of this type, it should have a “contributed” clause in its contract, as the Metropolitan Life had in the case of Evans v. Metropolitan Life Ins. Co., supra.
Accordingly we find no error in the record. The judgment of the trial court must be and it is hereby affirmed.
Kaufman, P. J., and Devine, J., concurred.