Kern, Leila R., J.
The defendant was indicted by the grand jury in January of 2011 on charges of Obtaining a Signature by False Pretenses and Larceny over $250 from an Elderly Person. Defendant now moves to dismiss those charges on the grounds that the grand jury indicted him on insufficient evidence under Mass.R.Crim.P. 13 and Commonwealth v. McCarthy, 385 Mass. 160 (1982). Defendant also moves to dismiss on the grounds that the integrity of the grand jury was impaired because the Commonwealth failed to present exculpatory evidence to the grand jury under Commonwealth v. O’Dell 293 Mass. 445 (1984). For the reasons contained herein, the motion is DENIED.
DISCUSSION
Standard of Review under McCarthy
For the grand jury to issue a valid indictment the grand jury must “hear sufficient evidence to establish the identity of the accused and probable cause to arrest him.” McCarthy, 385 Mass. at 162 n.5, 163. Probable cause to arrest requires “more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Roman, 414 Mass. 642, 643 (1993). It exists where, “at the moment of arrest, the facts, and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense.” *566 Commonwealth v. Story, 378 Mass. 312, 321 (1979), cert. denied, 466 U.S. 955 (1980).
Evidence Presented to the Grand Jury Background
Erika Magill was an 86-year-old woman who suffered a broken hip in the early morning hours of July 12, 2010. On July 13, 2010, Magill modified her will to leave her assets, including her home, to Lisa Miele, who was Magill’s caretaker, healthcare proxy, and the daughter of the former beneficiary of Magill’s will. After undergoing surgery on July 14,2010 Magill was transferred to a nursing home to recover and undergo rehabilitation. It is undisputed that on July 26, 2010, defendant, his business associate, and a notaiy visited Magill in the hospital. During this brief visit, Magill signed over her house to the defendant in exchange for two mortgages totaling $92,000 and payment of municipal liens in the amount of $9,000. Neither Magill’s attorney nor her medical proxy, Miele, was present at the time of the signing. On July 27, 2010, nurses were unable to wake Magill and she was taken back to the hospital, where, on July 31, 2010 she slipped into a coma from which she never emerged, passing away on August 12, 2010.
Obtaining a Signature by False Pretenses
The evidence presented to the grand juiy supports the existence of probable cause that the defendant obtained Magill’s signature by false pretenses. Evidence before the grand juiy showed that Magill’s physical and mental capacities were diminished because (1) her physical condition following surgery quickly deteriorated and she suffered post-operative complications; (2) she was in a significant amount of pain; (3) she was given a strong narcotic, Oxycodone, to alleviate that pain; and, (4) she failed a mini mental status exam upon admission to the nursing home. There was evidence before the grand jury that Magill’s condition was apparent from simply viewing her as she looked unwell and weepy and often complained of pain. The grand juiy could determine that the defendant, having visited Magill, was aware of her diminished condition.
Outside of Magill’s capacity to give valid consent, the circumstances surrounding the signing and the terms of the deed provide evidence of probable cause that the defendant obtained Magill’s signature by false pretenses. Magill had no legal or personal advisors present during the signing of the deed. Given Magill’s medical condition, mental status, age, and the seriousness of the document she was signing, it was, at the veiy least, inappropriate. The defendant had made attempts to purchase Magill’s house in the past and had been turned down. The grand juiy could have determined that the defendant made no effort to have any advisors present when Magill signed the deed because he was hying to take advantage of her condition.
While there was also evidence before the grand jury that the defendant was only looking out for Magill’s best interests and believed that others would try to take advantage of her, it is important to note that the only source of this information is the defendant himself, and his business associate. The grand juiy was entitled to discredit this evidence in favor of other evidence which indicated that Magill did not even like or get along with the defendant.
Larceny over $250 from an Elderly Person
The evidence presented to the grand jury supports the conclusion that there was probable cause that the defendant committed larceny over $250 from an elderly person. To begin, it is undisputed that Magill was an elderly person; at the age of 86, she far surpassed the age of 60, the minimum to be considered elderly. From the evidence the grand juiy could determine that the approximately $100,000 in mortgages and municipal liens the defendant was to pay for the house was inadequate and unreasonable based on the assessed value of the property of approximately $128,000.
Even if the two mortgages and the payment of municipal liens amounted to a reasonable price for the purchase of Magill’s home, the existence of the “in case of death” clause could be considered to be an attempt to defraud. As stated earlier, Magill was in poor medical condition and the defendant had reason to know of this condition. Still, defendant included a clause absolving him of any duty to make further payments for the house upon Magill’s death. The duration of the mortgages was 15 years. In order for the defendant to fully pay Magill for her house (with the “in case of death” clause), Magill would have to live to be 101 years old. Not only is that a rare occurrence for a healthy individual, but Magill was not doing well and the defendant could reasonably believe that Magill would pass away prior to his completing payments on the house. The existence of such a clause, combined with Magill’s condition, supports the grand jury’s conclusion that there was probable cause that the defendant intended to defraud Magill and obtain her property for far less than its actual value.
Standard of Review under O’Dell
“To sustain an argument that the integrity of the grand juiy has been impaired, the defendant must show: (1) that false or deceptive evidence was given to the grand juiy ‘knowingly’ or recklessly, ‘for the purpose of obtaining an indictment’; and, (2) ‘that the presentation of the false or deceptive evidence probably influenced the grand jury’s determination to hand up an indictment.’ ” Commonwealth v. Tavares, 27 Mass.App.Ct. 637, 639 (1989), quoting from Commonwealth v. Mayfield, 398 Mass. at 621. The Supreme Judicial Court has found dismissal appropriate where “the integrity of the grand juiy proceeding was impaired by an unfair or misleading presentation to the grand juiy of a portion of a statement attributed to the defendant without revealing that an exculpatoiy por *567 tion of the purported statement had been excised.” Commonwealth v. O’Dell, 392 Mass. 445, 447 (1984). The making of inaccurate statements in good faith does not require dismissal. Commonwealth v. Reddington, 395 Mass. 315, 320 (1985).
Evidence Presented to the Grand Juiy
Defendant contends that the grand jury was impaired in several instances during the presentation of testimony and evidence. To begin, defendant states that the grand juiy was erroneously informed that Lisa Miele had been Magill’s healthcare proxy since 2007 when the only copy of a Health Care Proxy signed by Miele was dated July 13, 2010. While there is no evidence other than the statement given by Miele, there is also no evidence to indicate that Miele was not Magill’s proxy prior to July 13, 2010. It is clear here that even if his statement is proven to be inaccurate, Detective Hultgren’s (the investigating officer in this case) testimony during the grand juiy proceedings was made in good faith based on Miele’s statement and does not require dismissal.
Second, defendant contends that the grand juiy was not informed of the second mortgage of $42,000 or of the payment of municipal liens in the amount of $9,000, as consideration (in addition to the first $50,000 mortgage) for Magill’s house. On page 13 of the grand juiy minutes, however, Hultgren discusses the existence of a second mortgage for $42,000. That mortgage is submitted into evidence as grand juiy Exhibit 6. Also, grand juiy Exhibit 5, the $50,000 mortgage, specifically states on the face of the document that defendant assumed' municipal liens. The grand juiy was also given a CD of Hultgren’s interview with the defendant where the defendant states that the amount of municipal liens totaled $9,000.
Third, defendant claims that the grand jury was misled with respect to the significance of the mini mental status exam. Defendant states that Hultgren testified that the exam determines if a patient is of sound mind, is able to make decisions, and whether they are competent, which is not corroborated word for word by one of the nurse’s statements. What defendant fails to recognize is that further down on page 22 of the grand jury minutes, Hultgren clarifies that statement to indicate to the grand juiy that as a result of having failed her mental status exam, Magill was considered “not able to make any medical decisions for herself.” This statement is entirely accurate.
Finally, defendant argues that the grand jury was not informed of Magill’s alleged desire for the defendant to have her home. The grand juiy did, however, receive a copy of Hultgren’s interview with Hayes-Hackett, the defendant’s business associate (who accompanied him to the hospital on July 26, 2010), which contains testimony that Magill wanted the defendant to have her home. Just because the grand jury did not give the weight defendant would have desired to this testimony does not mean that the grand jury was misled in any way.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s Motion to Dismiss is DENIED.