## Guardian Life Ins. Co. v. Robison.

May 19, 1939.

Wilbur Fields for appellant.

Frank J. Dougherty and L. H. Hilton for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

In July, 1921, the appellant issued a policy of life insurance to Henry David Robison, deceased husband of appellee, who was the named beneficiary of the policy. The policy provided for a payment of $2,000 for death, and further provided that an additional sum of $2,000, or double indemnity, would be paid:

"Upon receipt of further due proof that such death resulted directly and independently and exclusively

of all other causes from bodily injuries affected solely through external, violent and accidental means * * * provided however, that this Double Indemnity shall not be payable if the insured's death resulted * * * directly or indirectly from bodily or mental infirmity, poisoning or infection (unless such poisoning or infection occurred in connection with or in consequence of accidental bodily injuries) or illness or disease of any kind.''

The insured died on August 11, 1937. Appellant paid the $2,000 for his death, but refused to pay the double indemnity provided for under the clause of the policy quoted above, whereupon appellee instituted this suit to recover under the double indemnity provisions of the policy, alleging in substance that on or about July 31, 1937, the insured, while performing certain chores in the basement of his home, accidentally struck his head against certain pipes and projections affixed to the house in which he lived, thereby sustaining visible contusion or wound, severely injuring his head and other parts of his body, and thereafter, on or about August 11, 1937, the death of the insured occurred, which resulted directly, independently and exclusively of all other causes from bodily injuries, effected solely through external, violent and accidental means, and due proof of the facts set forth in petition was furnished to appellant.

Later, by amended petition, appellee alleged that on or about August 6, 1937, the insured was accidentally bitten on the middle finger of his right hand by a dog, thereby sustaining certain wounds, etc.; that the death of the insured resulted directly and independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means, from accidentally striking his head against certain pipes or other projections, as alleged in the original petition, or from being accidentally bitten by a dog, but plaintiff does not know which of them is true, but she does state that one of them is true, and, therefore, pleading said facts in the alternative.

A motion to require the plaintiff to elect which of the theories she intended to prosecute was overruled. However, the action of the Court in overruling said motion is not stressed or discussed in brief of counsel, hence we give it no further consideration.

Appellant filed its answer, denying the allegations that the death of insured resulted from accidental means, within the terms of the policy, and further denied that proof of alleged facts, set forth in petition, was furnished to it. It further plead as a defense that the death of the insured resulted from illness or disease, and affirmatively plead that plaintiff had not supplied defendant with due proof that the death of insured resulted from accidental means as alleged in the petition, and provided for in that clause of the policy.

By subsequent pleadings issue was joined and a jury trial had, resulting in a verdict and judgment thereon in favor of appellee for the sum sued for, and to reverse that judgment appellant has prosecuted this appeal. The grounds insisted upon for reversal are: (a) That the trial court erred in overruling appellant's motion for a peremptory instruction, because there was no competent testimony that insured died from accidental causes within the terms of the insured's policy sued on; (b) that no proof was furnished appellant that the insured's death resulted from accidental means, within the terms of the policy, and (c) the court erred in refusing to give instructions offered by appellant. We will discuss these points in the order named.

The insured was a salesman for the Bloemer Food Sales Company and resided in Bowling Green, Kentucky. According to the evidence of appellee, wife of insured, on the 31st day of July, 1937, the insured and their seventeen year old daughter, Wilhemia Robison, were in the basement of their home engaged in storing certain merchandise, and after they had been there a short while insured came up out of the basement and made certain statements to her, but the court excluded from the jury what insured told the witness. She further said that she parted his hair and saw a spot on his head where he "bumped it, and it was all red up there." She further said that there was a lump on his head but the skin was not broken; that he was able to continue his work the following week. On the following Saturday, August 7, the witness said her husband was as well as he ever was so far as she observed; ate breakfast and went to the voting place and voted in the primary election, which was being held on that day; that he came back and got the truck and made one business call, and then returned to the house and laid across the bed and said he was tired. He remained there from about

10:00 a. m. to 3:00 p. m., and some time between three and four o'clock he tried to talk, but could not, and she then called in Dr. Eldon Stone. He remained at Bowling Green until late Monday afternoon when he was taken to Louisville to a hospital and there attended by Dr. Frank Stites. He never regained consciousness and died Wednesday morning, August 11th.

Wilhemia Robison testified that there was a platform erected in the basement on which her father stored his food merchandise, and that she was with him in the basement on July 31, at the time he received his injury, and after they had been in the basement a short while her father "bumped" his head; she said she did not see him do it, but heard a noise like a "thump" and he exclaimed, "Oh," real loud, and immediately said he had hurt his head, and went right on upstairs and showed the wound on his head to her mother, and the latter inspected it.

On cross examination the witness was examined in reference to the location or place in the basement where her father was when the alleged accident occurred, and she said he was standing near a window on what they called the "Gonce side of the house," which was the only window on that side. She was asked if there were any pipes in the neighborhood of that window, and she said there were, and that the rafters over the basement "are well above a man's head." However, on being shown a diagram of the basement she virtually admitted that the overhead furnace pipes were not in the location of the window, where she said her father was at the time she heard him make the exclamation and remarks stated above. It is the theory of appellant that the rafters being well above the insured's head, and no pipes being there, he could not have received the alleged injury by striking his head against the rafters or pipes. But it appears from the evidence that the platform, mentioned above, was of sufficient height that when the insured was standing on it his head would come in contact with the pipes or rafters overhead.

Mrs. Howard Hagan testified that she lived just across the street, opposite the home of appellee, and deceased, and had known them two or three years, and that she was at their home on the day insured received the alleged injury and saw him in the basement. She was not present at the time of the alleged injury, but

when she went into the basement insured was leaning on a stack of boxes with his head in his hands and rubbing his face, and told her that he had bumped his head, and asked her to feel where he had bumped it, and she reached over and felt a knot on his head.

The court excluded from the jury the witness's statement that the insured said he bumped his head, because it appeared that too long a time had elapsed between the time of the accident and the statement he made to Mrs. Hagan, to be a part of the res gestae. The witness further said that the lump on insured's head was about the size of half of a walnut shell, and on the left side of his head. She said she stayed there fifteen or twenty minutes and insured's face was flushed and he kept rubbing his face and showed evidence of pain. Mrs. Hagan next saw insured on Tuesday following and talked to him, and he seemed to be "upset and more restless than I had ever noticed him"; and that he was not lively and friendly as usual and sat out to himself and would keep stretching his right arm out and gripping his right hand, like it was stiff or uncomfortable in some way. She next saw him on Thursday afternoon sitting out in front. She noticed that he showed the same restless attitude as described on the previous occasion. She next saw him on Saturday afternoon August 7, and he had a high temperature and his face was red and he was more or less delirious, and by supper time that evening he was paralyzed; that his right arm was paralyzed first, and then it seemed to extend to his whole body and he seemed to be conscious but unable to speak, and that it seemed he wanted to say something but was not able to move the muscles of his throat. She next saw him the following Sunday morning and he was still paralyzed and seemed to be about the same as the day before. Mrs. Hagan further said that for the two or three yeras she had known the insured he appeared to be healthy, strong, vigorous man, and she had observed no indications of ill health or other physical infirmities.

Appellant insists that since Wilhemia Robison's evidence places the insured near about the window when she heard him make the exclamation and statement mentioned above, and since there were no pipes or rafters overhead at that place, the accident could not have occurred in the manner alleged in the petition, namely, by striking his head against the rafters, pipes

or other projections. However, Mrs. Hagan places him on or near the platform a few minutes after the accident occurred, and it is shown that his head could have come in contact with the pipes or rafters overhead at that place. Conceding that there may be some inconsistency in the testimony of the two witnesses yet there is substantial and relative evidence tending to show that the insured's head came in contact with some object at or about the time and places described by the witnesses.

No witness claims to have seen insured strike his head against any object, and under the circumstances it is reasonable that he might have struck his head against the wall or some object other than the rafters or pipes overhead. However that may be, it was a question for the jury. It is our conclusion, therefore, that the evidence is sufficient to sustain the jury's finding that insured did receive a wound on his head by accidental means, within the terms of the policy.

The next question for consideration is whether or not the evidence is sufficient to sustain the jury's finding that insured's death resulted from the wound or injury to his head. Dr. Stone, who was called to insured's home on the evening of August 6, testified that he treated insured for abrasion of his right hand, due to a dog bite, and on the next afternoon, August 7, he was called by Mrs. Robison, and found the insured in a state of partial unconsciousness, partial paralysis of his right side, unable to speak and more or less in a comatose condition at that time. He said he did not notice any wound on his head, and he did not say anything about hurting his head; he had never been acquainted with insured before that. He said that his diagnosis of insured was that of cerebral hemorrhage, and the only cause that he could see for it was that it was probably due to hypertension or cardio vascular disease. He said that on the Monday morning following, insured developed pneumonia; however, he did not think that the abrasion on insured's finger, resulting from the dog bite, could have been a contributing cause of his death. He also said that in the absence of high blood pressure, insured's death may have resulted from the injury to his head, and further stated that only an autopsy would definitely ascertain that fact.

Dr. Stites, who treated the insured on August 9, after he had been taken to Louisville, testified that he

had developed pneumonia and was in a critical condition; he was unconscious, his pulse rather rapid; had a high temperature, and showed definite paralysis of his right arm and right leg. **Dr. Stites** filled out the death certificate as follows:

"I hereby certify, that I attended deceased from 8-9 1937 to Aug. 11, 1937; I last saw him alive on Aug. 11, 1937; death is said to have occurred on the date stated above, at 6:25 a. m. The principal cause of death and related causes of importance in order of onset were as follows:

"Lobar pneumonia, cerebral accident c right hemiplegia

"Contributory causes of importance not related to principal cause: Hypertensive cardio vascular disease * * *."

Dr. Stites gave it as his opinion that the proximate cause of insured's death was pneumonia, and the related cause was cerebral accident. He further said that if insured had paralysis on the right side of the body the injury was due to the left side of the brain. It is shown by the uncontradicted evidence that the wound on insured's head was on the left side. The witness was asked a hypothetical question, embracing the facts proven in the case, including the assumption that insured was in good health previous to July 31, and gave it as his opinion, based upon those facts, that the related cause of insured's death was cerebral accident. He said he took insured's blood pressure, and it was 148 over 70. A juror asked the witness if insured's blood pressure was abnormally high, and further said: "I ask that question, your Honor, to see whether that shock causing the paralysis was due to previous blood pressure or due to injury," and in answer to this inquiry, Dr. Stites gave it as his opinion that it was due to the injury.

Dr. Smock testified that a hemorrhage on the left side of the brain produced a resulting paralysis on the right side of the body, and that in right-handed individuals the speech center is developed on the left side of the brain, and in left-handed individuals the speech center is developed on the right side of the brain. It is shown by the evidence that the insured was a right-handed man. Dr. Smock gave it as his opinion that insured's

loss of speech was unquestionably due to the ascending hemorrhage and that the hemorrhage was due to trauma.

Dr. Boone testifying for the defendant stated that he did a general practice, minor surgery and internal medicine, and that he had done brain surgery only in a very limited way over a period of three years. He expressed the opinion that the major contributing cause of insured's death was cardio vascular disease. He further said that it would be necessary to have an autopsy to determine exactly the cause of death. The above resume is the substance of evidence produced on the whole case.

Appellant insists that the court erred in overruling its objections to the hypothetical questions propounded to the medical witnesses, because the questions included the assumption that the insured was in good health previous to the time of the alleged accident, insisting that this was error because it was shown by the medical witnesses that insured had high blood pressure, which was a progressive, slowly developing disease, and was afflicted with it before the time of the accident. We do not think there is any merit in this contention, since there was evidence to the effect that insured was in good health before the time of the accident. It is the rule that hypothetical questions may be based upon any state of facts that any of the testimony sustains, although there may be conflicting testimony. Kentucky Traction & Terminal Company v. Humphrey, 168 Ky. 611, 182 S. W. 854; Axton v. Vance, 207 Ky. 580, 269 S. W. 534; Gatliff Coal Company v. Hill's Adm'r, 263 Ky. 309, 92 S. W. (2d) 56.

It is earnestly insisted for appellant that the evidence of the medical witnesses shows nothing more than a mere suspicion that insured's death might have resulted from the wound on the head described by the witnesses, and since there was no autopsy made, the jury was left to merely speculate as to the cause of death. The policy provides that the company shall have the right and opportunity to examine the body, or to make an autopsy, unless prohibited by law. The appellant did not demand an autopsy, and if it thought an autopsy would have revealed the cause of death, it had the right to demand it, but it failed to make such demand. But even if an autopsy had been made the doc-

tors still could have only testified as to conditions revealed by the autopsy and expressed their opinion as to the cause of death.

In Kentucky Central Life & Accident Insurance Company v. Jones, 247 Ky. 432, 57 S. W. (2d) 72, 74, it is said:

> "While it was competent for the doctors to testify as to conditions revealed by autopsy and as experts to express their opinions as to the cause of the death of insured, the jury in their province was at liberty to reach a contrary conclusion. Pacific Mutual Life Insurance Company v. Cash, 224 Ky. 292, 6 S. W. (2d) 239, 241. This they did, and in the light of the evidence we might say as was said in the Cash Case, supra: 'No one can say with absolute assurance of accuracy that the death of (Jones) did, or did not, result directly from the accident, independently of the disease, and exclusively of its effects.' "

It may be conceded that no one can say with absolute assurance that the death of insured resulted directly from accidental means, independently of any disease. But in civil cases the law does not require that a cause of action or defense or other fact, be free from doubt, and even though the jury may not be thoroughly satisfied or convinced, still they may recognize that there is a preponderance of evidence, or at least substantive and probative evidence, tending to establish or refute any asserted fact or theory of either litigant. If insured was inflicted with high blood pressure, or other disease, previous to the alleged accident, and the accident set in motion events that resulted in his death, such accident was the proximate cause of his death within the meaning of the policy. National Life & Accident Insurance Company v. Kendall, Dixie Atlas Republic Insurance Company v. Kendall, 248 Ky. 768, 59 S. W. (2d) 1009.

It is the established rule that a peremptory instruction is proper only when the facts proven, and the inferences reasonably deducible therefrom, fail to furnish any evidence of a probative character, and the jury may only speculate or guess what the true facts or truth may be. If it be conceded that the verdict of the jury in the present case is against the preponderance of the evidence, yet we are unable to say that the evidence is insufficient to take the case to the jury, or that the ver-

dict is so palpably against the weight of the evidence as to raise the presumption of passion or prejudice.

We now come to the question of notice to appellant that insured's death resulted from accidental means. Appellee demanded the double indemnity, under the accidental death clause in the policy, even before suit was filed, which payment appellant refused, and the petition alleged accidental death and, also notice thereof, and appellant denied liability for payment of double indemnity for accidental death under the policy. This constituted waiver of further proof. Aetna Life Insurance Company v. Bethel, 140 Ky. 609, 131 S. W. 523; Staples v. Continental Insurance Company of New York, 223 Ky. 842, 5 S. W. (2d) 265; Pacific Mutual Company v. Cash, 224 Ky. 292, 6 S. W. (2d) 239; Fidelity & Casualty Company of New York v. Cooper, 137 Ky. 544, 126 S. W. 111.

It is insisted in appellant's brief that the instructions given by the court authorized recovery for the dog bite, which was not accidental. In this appellant is in error. The record before us discloses that appellee, plaintiff below, offered such instruction which the court refused to give, and we think properly so, because the evidence did not warrant it. Appellant further insists that certain other instructions offered by it should have been given, some of which are the same, and others substantially the same as the ones given by the court. The instruction given by the court, so far as is pertinent to the issue, reads as follows:

"(1) If you believe from the evidence that the death of the insured, Henry David Robison, resulted directly and independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means effected by a blow upon the head which left a visible contusion or wound, then the law of the case is for the plaintiff, Mrs. Delia Robison, and you should so find, in the sum of $2,000.00, with interest therein at 6 per cent per annum from August 11, 1937, until paid; but unless you so believe from the evidence, or if you believe from the evidence that the death of the insured resulted from illness or disease, the law is for the defendant, The Guardian Life Insurance Company of America, and you should so find, saying so by your verdict and no more."

We think this instruction, which is substantially in the language of the policy, fairly submitted to the jury the issues involved, and no other instruction was necessary.

Finding no error prejudicial to the substantial rights of appellant the judgment is affirmed.