Owen N. SCHUSTER, Appellant,

v.

Nathan R. STEEDLEY, Appellee.

The SUTCLIFFE COMPANY, Appellant,

v.

Owen N. SCHUSTER, Appellee.

Court of Appeals of Kentucky.

July 1, 1966.

Rehearings Denied Oct. 21, 1966.

Joseph E. Stopher, A. J. Deindoerfer, Boehl, Stopher, Graves & Diendoerfer, Louisville, for Schuster on both appeals.

Kent McElwain, McElwain, Dinning, Clarke & Winstead, Louisville, for Sutcliffe Co.

Raymond C. Stephenson, Louisville, for Steedley on both appeals.

PALMORE, Chief Justice.

The appellant Schuster's wife purchased and gave to him on his birthday, September 1, 1960, an old British military rifle she had seen advertised in a newspaper by The Sutcliffe Company for $9.95. Seven months later, on April 1, 1961, as the gun was being fired by a youngster under Schuster's supervision, a part of the breech bolt blew off and one or more of the fragments struck the appellee Steedley in the right eye, resulting in loss of the eye.

Steedley sued Schuster, alleging in substance that the cause of the accident was Schuster's negligence in loading the gun. After the one-year statute of limitations, KRS 413.140, had run on any claim Steedley might have asserted against Sutcliffe, by leave of court Schuster filed a third party complaint against Sutcliffe for indemnity in whatever amount might be awarded against him in favor of Steedley, alleging that the cause of the accident was a defective and dangerous condition of the rifle existing at

the time of the sale to Mrs. Schuster, which condition was known to or should have been discovered by Sutcliffe. Sutcliffe answered and denied negligence but did not raise the question of whether the third party complaint stated grounds upon which relief could be granted. Cf. CR 12.02.

Over Sutcliffe's objection the two claims were tried together, and the jury returned a verdict awarding Steedley $37,100 against Schuster and finding for Schuster on his third party complaint against Sutcliffe. At Sutcliffe's request the jury was directed to return to the jury room and make a finding as to whether the cause of the accident was the ammunition, a defect in the gun, or both. Accordingly, the verdict was supplemented as follows: "We, the jury, feel that both the gun and the ammunition were at fault in this case."

Both Schuster and Sutcliffe made appropriate objections to the instructions and presented timely motions for directed verdicts, for new trials, and for judgments n. o. v., all of which were overruled. Schuster appeals from the judgment against him in favor of Steedley, and Sutcliffe appeals from the judgment requiring it to indemnify Schuster.

The gun in question was a .303 calibre Lee-Enfield bolt-action rifle manufactured in 1916. It was one of a number of such weapons Sutcliffe had purchased from another dealer. Sutcliffe advertised, "These guns have been used by the British Army and are all in excellent firing condition," though it had not inspected them. The guns were sold out of the crate in which Sutcliffe had received them, still covered with a preservative grease. Schuster field-stripped the rifle his wife had given him and made some modifications to the stock and other parts but did not alter any of its operating mechanism. He was a gun enthusiast but not a firearms expert. The gun was old and much-used, and although there is substantial evidence that it was in a worn-out and unsafe condition that could and would have been discovered by Sut-

cliffe if its gunsmith had inspected it, we think it can be fairly said that Schuster's qualifications were not such that he could or should have observed these defects. The only basis for liability on Schuster is the theory that the ammunition was overcharged or, possibly, that at the time of the accident a bullet from the previous firing of the rifle was still lodged in the barrel.

Schuster had fired the gun about 1,000 times during the 7-month period it had been in his possession. The first 200 times or so he had used standard ammunition, but eventually he bought a hand-loading kit and a Lyman instruction handbook, after which he employed used shells, made his own bullets, and loaded the cartridges himself. For military purposes the standard charge, using a 200-grain cast bullet, would be approximately 42 grains of progressive or slow burning powder, but the cartridge may be loaded with a smaller quantity of fast burning powder. Schuster, following the Lyman handbook, was using Hercules 2400, a fast burning powder. The recommended quantity of this powder was 21 grains, but from experience he learned that 21 grains were more than he needed for target shooting, and some time prior to the accident he had reduced the charge to 12 grains, which is considered a light load. None of these procedures, accurately executed, is negligent, but the handloading operation must be conducted with meticulous care. 12 grains of the 2400 powder occupy only 26% of the space in the cartridge case. Should the case inadvertently be filled with 2400 powder, amounting to 42 grains or more, the charge would be so excessive as to blow off that part of the bolt head on which the cartridge extractor is mounted. This was demonstrated by tests made on two similar rifles.

There was ample evidence from which the jury reasonably could have found that the cause of the accident was the defective condition of the gun, existing at the time it was sold by Sutcliffe to Mrs. Schuster. However, assuming further that Sutcliffe was negligent in failing to inspect for and

discover this condition, cf. Gaidry Motors v. Brannon, Ky., 268 S.W.2d 627, 629 (1954), we are of the opinion that Schuster cannot recover from Sutcliffe by way of indemnity.

■ Indemnity is allowed in a negligence case when one party's liability has resulted from the primary fault of another. Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165 (1949). The only negligence by Schuster that Steedley alleged or sought to prove was in the loading, and that was the only theory on which the instructions authorized a recovery against Schuster. Hence Schuster's liability did not rest upon any condition for which Sutcliffe was responsible or at fault.

■ If, as the jury may have intended to say, the accident resulted from two causes, a defective condition of the rifle and an improper loading, neither of which would have done it alone, perhaps Schuster could have succeeded in a claim against Sutcliffe for contribution, but that question is not presented, because the third party complaint is confined to indemnification. In any event, to allow recovery by Steedley against Schuster because Schuster was negligent in loading or handling the gun, and then permit Schuster to shift the liability to Sutcliffe because the gun was defective, results in an anomaly. Though Sutcliffe did not assert the appropriate defense (that the third party complaint failed to state grounds on which relief could be granted) by answer or written motion, it did clearly raise the issue in connection with its motion for a directed verdict at the close of all the testimony and in its objections to the instructions. Under the circumstances we think the motion for a directed verdict can be equated with a "motion at the trial on the merits," as authorized by CR 12.08. See Clay's Kentucky Practice, Rule 12.08, Comment 4.

With Sutcliffe eliminated from the case, the questions remaining to be decided are (1) whether there was sufficient evidence to sustain a verdict against Schuster and, if so (2) whether in view of the instructions given the verdict against Schuster should be allowed to stand.

■ Schuster's principal contention is that under the state of the evidence the jury was required to speculate in arriving at the cause or causes of the accident. Unquestionably the trial was a field day for the experts. All of them suggested possible causes, some more likely than others, but most of them had opinions as to what was probable. The mere fact that these opinions were divergent, reflecting the positions of the respective litigants for whom they were appearing, does not necessarily mean that a choice as to which one to believe was speculative. For example, if in an automobile accident case the crucial issue is whether a traffic light was red or green, and there are only two eyewitnesses, both disinterested and of equal repute and credibility, but one swears the light was red and the other just as firmly swears it was green, it could be argued that the choice between them must depend on pure speculation or guesswork. And in fact it may, but the law says the jury can make that choice. The kind of speculation that is not allowable occurs when the probabilities of an event's having happened in one or two or more ways are equal and there is *no evidence* as to which way it happened. That was the situation in the cited cases of Martin v. Louisville Gas & Electric Co., 198 Ky. 370, 248 S.W. 868 (1923), and McAtee v. Holland Furnace Co., Ky., 252 S.W. 2d 427 (1952); and in such other cases as Priest's Adm'x. v. E. L. Anderson Lumber Co., Ky., 302 S.W.2d 376 (1957); Steely v. Hancock, Ky., 340 S.W.2d 467 (1960), and United Electric Coal Companies v. Brown, Ky., 354 S.W.2d 502 (1962). In this case, however, the opinions of the experts supply the missing evidence. We perceive nothing in Cline v. Wenger, Ky., 263 S.W.2d 91 (1953), or Provident Life & Accident Ins. Co. v. Diehlman, 259 Ky. 320, 82 S.W.2d 350 (1935), requiring a different conclusion.

The witness Haas, an amateur gunsmith with much experience in the construction and use of firearms, was of the opinion that the rupture of the cartridge case and bolt mechanism resulted from one of two things, an excessive charge or a bullet left in the barrel from the previous shot. Either one of these causes would support a verdict against Schuster.

The witness Haddaway, Sutcliffe's gunsmith, testified to the same effect. Both Haas and Haddaway recognized other possibilities, but both gave positive opinions that excessive pressure from an overcharge or from an obstruction in the barrel was the probable cause.

The witness Munhall, of the H. P. White Laboratory at Bel Air, Maryland, was the best qualified expert to appear. He was first consulted by Schuster but eventually testified for Sutcliffe. He observed certain defects in the rifle which made it dangerous to use, but was positive that these defects did not cause or contribute to the accident. His initial opinion after studying the case and making certain tests was that the break was caused by an excessive charge of powder, but he later decided that more probably it resulted from a phenomenon, or freak accident. There is a theory, he said, that when a cartridge is loaded with a charge that does not completely fill the cavity between the bullet and the primer (which is located at the base of the shell), the flash from the primer may skip over the powder lying in the shell and move the bullet a short distance out of the shell and lodge it in the barrel of the gun an instant before the powder fully ignites and produces the main propulsive force of the explosion. If this happens, the effect is about the same as if there had been another bullet left in the barrel. Since much more force is required to eject a bullet so lodged, excessive force is simultaneously exerted against the base or rear end of the cartridge and is transmitted to the breech mechanism of the gun behind it.

It is interesting to note that this witness, though finally concluding that the freak occurrence was more likely than an excessive charge of powder (or an obstruction in the form of another bullet), admitted he had tried to create the same phenomenon by experimentation and had never been successful. That being the case, there can be only one basis on which he thought it was probable in this particular instance, that is, an acceptance of the hypothesis that there were in fact only 12 grains of 2400 powder in the cartridge and that the gun was properly loaded—to-wit, the testimony of Schuster, whose counsel had employed him in the first place. This, however, was a hypothesis the jurors were not obliged to and obviously did not accept, and we are of the opinion after a careful examination of it that his testimony alone is sufficient to support a finding that the accident resulted from an improper load. Hence the evidence sustains the verdict.

The instructions given by the trial court were anomalous and undoubtedly confusing to the jury. However, all of the ambiguity attaches to and arises out of the instructions pertaining to Sutcliffe.

By instruction No. 1 the jury was advised that if "the plaintiff, Nathan R. Steedley, sustained the injuries by him alleged by reason or because of the negligence of the defendant Schuster in the loading of said shells and as a direct and proximate result thereof, then the law in this case is for the plaintiff against the defendant Schuster, and you will so find," etc. With respect to Steedley's claim against Schuster, the verdict read as follows: "Under instruction No. 1, we the jury, find for the plaintiff, Nathan R. Steedley, against the defendant, Owen N. Schuster, and award to the plaintiff the sum of $37,100.00."

Thus it seems quite clear that the jury believed Schuster did not load the gun properly and that his negligence was a proximate cause of the accident. That establishes his liability to Steedley irrespective

of Sutcliffe's role in the case, and there is no reason to relitigate the issue.

In discussing this case we have refrained from taking up Steedley's contention of *res ipsa loquitur* as against Schuster. Cf. Bell & Koch, Inc., v. Stanley, Ky., 375 S.W.2d 696 (1964). Had his allegations of negligence been general enough to include a defective rifle as well as improper loading, the question might have been cleanly presented. There is much to be said for the proposition that anyone who uses an old second-hand gun should bear the risk of accidents resulting from its condition. Even the perfect one-horse shay gave way at last. But it is unnecessary to determine that issue this time.

The judgment is affirmed with respect to the Steedley's recovery against Schuster. With respect to Schuster's recovery against Sutcliffe it is reversed with directions that a judgment n. o. v. be entered dismissing the third party complaint.