**Robert L. MILLER, Appellant,**

**v.**

**Douglas Reed WATTS, Appellee.**

Court of Appeals of Kentucky.

Jan. 17, 1969.

Robert L. Milby, Hamm, Taylor & Milby, London, Rose & Short, Beattyville, for appellant.

James S. Hogg, Jackson, S. Russell Smith, Louisville, for appellee.

DAVIS, Commissioner.

Judgment was entered upon a verdict for $10,025 in favor of Douglas Reed Watts, an infant, in his suit against Robert L. Miller for injuries allegedly sustained in a no-contact motor vehicle occurrence. Miller appeals, asserting that (1) the court erred in denying a change of venue; (2) the complaint should have been dismissed for failure of plaintiff to file a bond for costs; (3) complaint should have been dismissed for failure to answer interrogatories; (4) there was no evidence that the alleged negligence of Miller proximately caused any injury to Douglas; and (5) there was no competent evidence of a substantial injury to support the verdict.

On August 4, 1963, Douglas, then age three, was riding on the front seat of a car driven by his father, to whom we shall refer as Watts. As Watts was proceeding at about 30–35 m. p. h. along a "blind" curve, he observed Miller's car approaching from the opposite direction and negotiating a left turn across Watts' traffic lane. Watts applied his brakes forcibly and was able to avoid a collision with the Miller car. It is the theory of Douglas that he was thrown against the dashboard of his father's car incident to the sudden stop, thereby sustaining a head injury from which there developed an epileptic condition.

Watts said that he was thrown against the steering wheel by reason of the sudden stop, but he did not specifically state that he observed what happened to Douglas at the time. Watts alighted from his car, incensed at what he considered Miller's careless driving, and started to walk toward the Miller car. When he reached the rear of his own car, he thought about Douglas and went back to see about him. He found the boy lying on the floor of the car with his head toward the right side of the car and his feet "turned up against the seat." Watts said that Douglas was unconscious and bleeding from a cut on his forehead. The boy was pale, his eyes were closed, and he was limp as Watts picked him up. Watts carried Douglas to the front yard of the home into which Miller had planned to turn. In a short time the child appeared to be all right, so Watts took him home.

On August 12, 1963, Douglas was taken to see Dr. Arnold Taulbee in connection with a swelling of his arm. Watts, who took the boy to Dr. Taulbee, made no mention of any injury to Douglas' head, but spoke of the injury to the arm as having occurred in an automobile accident. Dr. Taulbee found no broken bone in Douglas' arm.

Shortly after Douglas' visit to Dr. Taulbee, his parents observed that he began to "pass out" or "fall out." When these seizures persisted, Mrs. Watts took him to Dr. Robert Cornett in Jackson for treatment. Dr. Cornett could not detect any abnormality in Douglas from objective symptoms or clinical examination. He did, however, make and testify to a diagnosis based upon the history of the child's condition as related to him by the mother. Dr. Cornett did not have available to him the means for a complete diagnosis at that time, so he suggested that Douglas should be taken to Dr. Harvey Chenault in Lexington. It was not until July 1964 (after suit had been filed in May 1964) that Douglas was taken to Dr. Chenault for treatment.

We deal with the assignments of error in the order in which appellant has presented them. The first relates to appellant's claim that he should have been granted a change of venue based on affidavits that "no defendant in the last five years has been successful in winning a case before a jury in Breathitt County," and that plaintiff's attorney, James S. Hogg, "has advertised in the newspapers of Breathitt County the fact that he practices largely, if not exclusively, against insurance companies, and said information is widespread throughout the County." KRS 452.010(2), as it existed when the application for venue change was made, provided:

"A party to any civil action triable by a jury in a circuit court may have a

change of venue when it appears that, because of the undue influence of his adversary or the odium that attends the party applying or his cause of action or defense, he cannot have a fair trial in the county."

Certainly there was no allegation or proof that three-year-old Douglas, appellant's "adversary," possessed such "undue influence" in Breathitt County as would preclude appellant's fair trial. The claim that Douglas' attorney had publicized his devotion to practice against insurance companies had to do with some political advertisements published by the attorney in his *unsuccessful* race for county attorney some three or four years before the trial. An affidavit of Douglas' attorney made reference to a specific case in which the attorney had "lost" to a defendant.

■ We find no merit in appellant's assertion that a change of venue should have been granted. The motion for the change was not made until August 1965, although the suit had been filed in May 1964. The appellant had filed his answer and counterclaim, taken depositions, and made various motions without raising the venue question. The claimed bases for the change of venue were as well known to appellant when the suit was filed against him as they were some fifteen months later. In Pierce v. Crisp, 267 Ky. 420, 102 S.W. 2d 386, it was held that unwarranted delay in making the motion amounts to a waiver of the right to seek a change of venue. As expressed in that opinion, the application for change of venue should be made "with reasonable dispatch." Id. 102 S.W. 2d 387. The same decision points out that the matter of granting change of venue lies within the sound judicial discretion of the trial court. The exercise of that discretion will not be disturbed on appeal unless the facts clearly indicate an abuse of it. We note that we regard as extremely serious the claim that a defendant cannot obtain a fair trial in personal injury cases, and if such a ground for change of venue is timely presented and adequately demonstrated as credible, we will not hesitate to require change of venue.

■ Appellant moved the trial court to require Watts, suing as next friend of his son, to file a bond for costs as prescribed by KRS 453.235. There was no allegation that the next friend was insolvent. The plaintiff prevailed, so if it was error to deny the motion for bond, it was harmless error. Dr. Pepper Bottling Co. of Kentucky v. Hazelip, 284 Ky. 333, 144 S.W.2d 798.

■ The plaintiff below was remiss in failing to make timely answers to interrogatories. An appropriate motion was made in behalf of appellant that the complaint be dismissed for such failure, as prescribed by CR 37.05. The motion to dismiss was accompanied by an alternative motion for a reassignment of trial date in the event further time was allowed appellee in answering the interrogatories. The trial court directed that the interrogatories be answered (which they promptly were after such order) and granted appellant's motion for continuance in order to enable him to prepare for trial in light of the information contained in the answers to the interrogatories. In this state of case, it seems to us that no prejudicial error occurred of which appellant may complain. This is particularly so in view of the fact that the statute of limitation, insofar as applicable to the infant plaintiff's personal injuries, would not have prevented a refiling anyway.

■ It is next argued that there was no evidence proving that the alleged negligence of appellant proximately caused injury to Douglas. The thrust of this argument is that no direct evidence was presented to show that Douglas was thrown against the dash of the car. Appellant suggests that the child probably fell out of the seat in an effort to follow after his father. It seems to us that the argument is facetious. Appellant cites Larkin v. Baker, 308 Ky. 364, 214 S.W.2d 379; Hughes Adm'x v. Shouse, Ky., 245 S.W.2d 940; Wright v. Hickman, 308 Ky. 634, 215

S.W.2d 553; Gross v. Barrett, Ky., 350 S. W.2d 457; and Klingenfus v. Dunaway, Ky., 402 S.W.2d 844, in which the general proposition is reiterated that a verdict may not be based upon speculation and that if a plaintiff's injury may as reasonably be attributed to a cause for which the defendant is not responsible as to one for which he is, the plaintiff has failed to present a submissible issue. We agree with the principles enunciated in the just-cited authorities but find them inapplicable here. It seems to us that it is not merely *possible*, but *reasonably probable*, in the experience of mankind, that the sudden stopping of Watts' car threw Douglas off the seat and precipitated him against the dash or other portion of the car so as to cut his head and render him unconscious in the circumstances at bar. It is *possible* that the child could have fallen from the seat while seeking to follow his father, but it is very *improbable* that a three-year-old child would alight from the car seat with such force as to knock himself unconscious and cut a hole in his head. The plaintiff need not establish a case beyond a reasonable doubt. "The proximate cause is a cause which would probably, according to the experience of mankind, lead to the event which happened, and remote cause is a cause which would not, according to such experience, lead to such an event." Stevens' Adm'r v. Watt, 266 Ky. 608, 99 S.W.2d 753, 755. As noted in Schuster v. Steedley, Ky., 406 S.W.2d 387, regarding the type of speculation which is not permitted in jury trials, it was said: "The kind of speculation that is not allowable occurs when the probabilities of an event's having happened in one or two or more ways are equal and there is *no evidence* as to which way it happened." Id. 406 S.W.2d 390. In Schuster we held that the jury's verdict was not based on speculation. We so hold here, because we do not regard the probabilities of Douglas' injuries as having happened in one or two or more ways as equal —rather, we regard the probability of his injury as having occurred by his being thrown against the dash as far outweighing any remote possibility of some other cause of it.

Finally, it is argued that there was no competent evidence of a substantial injury to support the verdict. Dr. Cornett and Dr. Chenault testified that in their opinion Douglas is suffering traumatic epilepsy. We quote pertinent portions of the doctors' evidence:

"Q. 12. Will you relate to this court the history given you as a trained physician, by the accompanying parent?

MR. MILBY: Object.

COURT: Overruled.

A. The parent brought the baby to me on October 29, 1963 with a history that the baby had been injured in a car accident on 8–4–63, at which time she said the boy did have a head injury and had been knocked unconscious for an unknown length of time—

MR. MILBY: Object to the history on the ground this witness could not have known as much, in as much as she was not present.

COURT: The jury understands that. I will let it go in the record.

Q. 13. She didn't give you any history as to the behaviour or deportment of the child before and after this trauma, or did she?

MR. MILBY: Object.

MR. HOGG: That would certainly be within her knowledge.

A. According to her history the baby had been perfectly normal until the time of the accident and since the head injury it had been having some seizures. The seizures she interpreted as fainting spells and in my opinion they were of the grand mal type seizures although she did say the baby jerked some and did foam at the mouth.

Q. 14. What was your diagnosis of the child's condition?

MR. MILBY: Object to the diagnosis unless he shows his findings.

COURT: Well, I will—

MR. HOGG: That's alright, Your Honor, thank you.

COURT: I will let him give his diagnosis of the child when it was brought to him.

A. From the mother's history the diagnosis to me was a type of epilepsy.

Q. 15. What type?

A. From the history given to me I diagnosed it as post traumatic epilepsy.

Q. 16. Is that type of epilepsy compatible with the type of injury related to you as happened to the child?

A. It is oraganic (sic) epilepsy and usually due to some type of trauma to the brain, that's right."

Dr. Chenault was asked and said:

"Q. 10. Will you relate your findings on your initial examination, the history given you, course of treatment, your diagnosis and prognosis?

MR. MILBY: Objection to the history because as we understand the history was given by a person who did not have personal knowledge of the facts and therefore certain aspects of the history is hearsay, even to the giving.

COURT: Overruled.

A. The child's mother told me he had had fainting spells for about a year. She said these were sudden falling spells or unconsciousness of fairly short duration but so far as I could determine without any shaking or jerking of the extremities or frothing at the mouth or none of the other clinical accompaniments of convulsion. She thought he had them about every two weeks. Also, she said he was the second of three children. He had a normal birth and she stated he had had a great deal of bronchitis and that he had had his appendix out at the age of thirteen months. He

had been hurt in a car wreck in 1963 in which he was thrown against the dashboard of his father's car and was knocked unconscious for such a length of time that he had to be seen by a physician. We found a well developed and healthy appearing little boy and he was unusually helpful so we could make a neurological examination. It was more complete than usually we can make on a three year old. The size of his head looked a little big but there was no certain abnormality of size and shape and nothing wrong. His cranial nerves, motor system and sensory system and reflexes and coordination all appeared normal. At that time we felt that he had a convulsive state some people call epilepsy, mild to moderate in degree. We had X-rays of his skull made by Dr. James S. Rich of this same office address and these were examined by me and were normal. We told his mother to give him Dilantin which is a medicine for the control of epileptic seizures of whatever nature or origin, and I have not seen the child since. I did not feel that an encephalogram would be helpful because the child was too young to comprehend sufficiently to make it valid. I believe I said I have not seen the child since and do not know what his course has been since that time."

There has been no attack on the qualifications of either of these physicians. The appellant contends that the physicians simply did not have sufficient facts to support their diagnosis. This contention is premised on the fact that Douglas' mother gave the history of Douglas' having been knocked unconscious in an automobile accident. Inasmuch as the mother was not present at the accident, reasons the appellant, her statements to the doctors were rank hearsay. There might be merit in this argument but for the fact that Douglas' father testified that Douglas indeed was rendered unconscious as a result of the automobile accident. It seems plain that either or both of the doctors,

even if they had never examined Douglas, could have expressed their medical diagnosis based upon a purely hypothetical question so long as the question encompassed matters proven in the record. Guardian Life Ins. Co. v. Robison, 278 Ky. 678, 129 S.W.2d 192; Sonne v. Booker, Ky., 310 S.W.2d 526; Nall v. Larkin, Ky., 421 S.W.2d 74; Nordmeyer v. Sanzone (6CA) 314 F.2d 202.

It is significant that the only objection to evidence from the doctors was on the basis that the history given was hearsay. Generally, it has been said that hearsay testimony is unacceptable because it is not subject to the tests which can ordinarily be applied for the ascertainment of the truth of evidence. Kinder v. Commonwealth, Ky., 306 S.W.2d 265; 29 Am.Jur.2d, Evidence, Section 494, Page 552. The unreliability of hearsay evidence is the fundamental reason for its rejection. In this case the hearsay history given by Douglas' mother was verified by the eye-witness testimony of Douglas' father. Its verity for the purposes of enabling the doctors to formulate an opinion was submitted before the jury subject to all of the safeguards surrounding the admission of evidence generally.

It has long been held that case history given to a treating physician vis-a-vis a physician consulted merely for the purpose of testifying may be related by the treating physician. See Com., Division of Forestry, Department of Conservation v. Farler, Ky., 391 S.W.2d 371, in which we held that a patient's history related to a treating doctor by a member of the patient's family was admissible. The patient had confirmed that history when he was able to do so, although he died before the doctor testified. If an adult may relate history to his treating doctor, so as to make that doctor competent to testify, it seems plain that history related to a treating doctor by a parent, custodian, guardian, or nurse of an infant of tender years must also be admissible. The same reason which makes this type of evidence an ex-

ception to the hearsay rule, as regards adults, is applicable with respect to infants. The law reckons that an individual seeking medical relief will speak the truth to his treating doctor—how much more will the law reckon that an anxious and loving mother will speak the truth to a doctor to whom she has entrusted the treatment of her infant child. This rule was recognized in Gordon v. Engineering Construction Co., 271 Minn. 186, 135 N.W.2d 202, in a case strikingly similar to the one at hand. There a 3½-year-old child was injured and experienced convulsive seizures of greater severity and more frequency than he had experienced before the accident. The child's parents related the child's medical history to a neurologist who made a diagnosis based on that history. The trial court rejected the diagnosis as being based on hearsay, but the Supreme Court of Minnesota held that to be erroneous and said in part:

"Ordinarily, a medical opinion predicated on information obtained from a third party other than the patient is not admissible, although we have held it is not prejudicial to receive it if the history relied on has been corroborated by independent and competent testimony. Riley v. Luedloff, 253 Minn. 447, 450, 92 N.W.2d 806, 809. However, we believe the rule should be otherwise with respect to a history furnished by the attending physician or nurse, more particularly when the nurse is the patient's parent, if the patient is incompetent to provide the information himself by reason of infancy or other disability. In this conclusion we find support in Yellow Cab Co. v. Henderson, 183 Md. 546, 552, 39 A.2d 546, 550, 175 A.L.R. 267, 271, and 3 Wigmore, Evidence (3 ed.) § 688, p. 8. The foundation in the instant case was therefore proper." Id. 135 N.W.2d page 204.

We consider the reasoning of the Minnesota court sound and follow it.

The appellant contends that the history as given by the mother is fatally

inaccurate inasmuch as she told Dr. Cornett that Douglas had been rendered unconscious "for an undetermined length of time" and she told Dr. Chenault that Douglas had been rendered unconscious for such a length of time as required attention by a doctor. Appellant did not examine either of these doctors to determine whether their diagnosis would have been different if the duration of the unconsciousness had been merely momentary, nor did the appellant object to the admission of the testimony of the doctors on any ground except the hearsay of the history. There is nothing in the testimony of either of the physicians to suggest that they relied on the duration of unconsciousness as a background for their diagnosis. If the appellant had challenged their evidence by inquiry along that line, appellee would have had opportunity to offer countervailing evidence. When appellant specifically limited his objections to the question of hearsay evidence, he may not now be heard to complain of it on a different basis. See Johnston v. Reily, 82 U.S.App.D.C. 6, 160 F.2d 249, for the proposition:

"Where objection at the trial to admission of letter in evidence was that the letter did not make a positive assertion of fact but only expressed an opinion, the objection was insufficient to support the ground urged on appeal that the letter was hearsay and that there had been no foundation laid for its introduction."

The same principle is applicable here. Even though the court did not request counsel to specify the basis of his objection as provided in CR 46, when counsel did specify the ground, it would be inappropriate to consider some other unspecified ground. Cf. Thomas v. Wade, Mo., 361 S.W.2d 671, 675.

The judgment is affirmed.

HILL, MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.

MONTGOMERY, C. J., and OSBORNE, J., dissent.