**MARY BRECKINRIDGE HEALTHCARE, INC. And Betty Johnson, R.N., Appellants**

v.

**Sylvania ELDRIDGE, Individually, And As Administratrix of The Estate of Ira Eldridge, Appellees.**

No. 2006–CA–001949–MR.

Court of Appeals of Kentucky.

Dec. 31, 2008.

Griffin Terry Sumner, Kenneth J. Tuggle, William T. Donnell, Louisville, Ky, for Appellants.

W. Barry Lewis Hazard, KY, Brief of The Intervening Plaintiff, Kentucky Employers' Mutual Insurance.

Phillip Lewis, Hyden, KY, for appellees.

Before: COMBS, Chief Judge; CAPERTON and MOORE, Judges.

## OPINION

CAPERTON, Judge.

This case is appealed to our court from the Leslie Circuit Court wherein the court entered judgment for plaintiff below, Appellee herein, for injuries received as a result of the negligence of defendant below, Appellant herein. After a thorough review of the record, we affirm.

Ira Eldridge was injured and required medical treatment. Eldridge was admitted to the hospital, a Groshong catheter[1] was implanted in the right atrium of his heart, and he was then discharged and placed under the care of Mary Breckinridge Home Healthcare. Nurse Betty Johnson, an employee of Mary Breckinridge Home Healthcare, was assigned to Eldridge for his home health care needs. Nurse Johnson trained Eldridge and his wife, Sylvania, in the use of the Groshong catheter. All went well until October 17, 2003, the events of which give rise to the case now before us.

On October 17, 2003, Nurse Johnson made two visits to the home of Eldridge. On the first visit, at approximately 10:20 a.m., Nurse Johnson changed the dressing at the catheter site as normal with the exception of using scissors to assist in changing the dressing. Subsequently, a leak developed at the catheter site and medication leaked from the catheter onto

---

1. The catheter was to allow the administration of IV antibiotics to treat infection arising from Eldridge's injury.

the chest of Eldridge. Eldridge called Mary Breckinridge Home Healthcare and reported the leak. This required a second visit by Nurse Johnson. The second visit was at approximately 4:35 p.m. that afternoon.

The health care records show that upon Nurse Johnson's arrival that Eldridge's vital signs were normal.[2] Nurse Johnson's health care notes state she changed the dressing at the catheter site. However, according to the testimony of Mr. Mullins, a witness present during her second visit, she also attempted to manipulate the catheter by pulling and tugging on it.

Before Nurse Johnson completed her 30 minute visit, Eldridge's condition was such that Nurse Johnson recommended Eldridge go to the hospital. Eldridge refused Nurse Johnson's offer to call for an ambulance, but rather insisted upon driving himself to the hospital, and called Sylvania to advise her of his condition and the trip to the hospital.

Sylvania testified that during that phone conversation with Eldridge that he was nervous, had problems breathing, and was coughing. Eldridge left his home and Sylvania testified she met Eldridge on the way to the hospital, at which time he looked scared, was excited and had trouble breathing. Sylvania assumed the transport of Eldridge, and Eldridge told her of the events during the second visit.

Sylvania testified that Eldridge said during the second visit Nurse Johnson tried to manipulate the tubing to correct the problem, taped over the hole in the tubing created when she previously cut the tubing on the first visit, and kept trying to clear the tubing by flushing it. Again, Nurse Johnson has no independent recollection of any events surrounding the second visit. On their way to the hospital, Sylvania testified that Eldridge was quivering, coughing, leaning, and ultimately lost consciousness. Upon arrival at the emergency room, Sylvania relayed the statements made by Eldridge to the doctors, who included the statements in their emergency room notes. Eldridge never regained consciousness and died the next day.

The emergency room doctors and treating physicians testified that the catheter was dislodged and ultimately found under the right clavicle instead of in the right atrium of the heart, that a crack was in the catheter and an attempt had been made to tape over the crack, that there were clot formations (thromboses) along the catheter tubing and that upon aspiration the catheter returned air.

The experts of Eldridge and Breckinridge presented different theories to the court as to the cause of death of Eldridge. Eldridge's expert relied solely on the statements made by Eldridge, as repeated to the emergency room doctor by Sylvania, to form his opinion as to the cause of death. It is these statements that are at issue in this appeal.

▪ We review a trial court's ruling regarding the admission or exclusion of evidence for abuse of discretion. *See Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393 (Ky.App.2004); *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co.* at 581, *citing English* at 945.

---

**2.** Testimony from Nurse Johnson is limited in that she has no independent memory of the events that afternoon and had to rely entirely upon her health care notes.

The decisions of the trial court as to findings of fact in a trial without a jury, including such factual findings that serve as a basis for the admission of evidence, "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. *See also Lawson v. Loid,* 896 S.W.2d 1, 3 (Ky.1995); *A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.,* 998 S.W.2d 505, 509 (Ky.App.1999). A factual finding is not clearly erroneous if it is supported by substantial evidence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003); *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998); *Uninsured Employers' Fund v. Garland,* 805 S.W.2d 116, 117 (Ky.1991). Substantial evidence is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence ... has sufficient probative value to induce conviction in the minds of reasonable men." *Moore* at 354. *(internal citations omitted).*

Lastly, we have long held that we will uphold a correct result of the trial court even if reached for the wrong reason. *McBeath v. Commonwealth,* 244 S.W.3d 22, 38 (Ky.2007) *(citing Commonwealth v. Fields,* 194 S.W.3d 255 (Ky.2006)).

The crux as to admissibility into evidence of the statements from Eldridge to Sylvania lies with whether they are properly within a recognized exception to KRE 802.[3] Their admissibility will now be considered under the various arguments of the parties.

The arguments presented by counsel for the parties all agree that the operative rule is KRE 803.[4] Eldridge argues the statements should be admitted as statements necessary for medical treatment (KRE 803(4)), business records (KRE 803(6)), state of mind (KRE 803(3)), excited utterances (KRE 803(2)), and/or present sense impressions (KRE 803(1)). In opposition, Breckinridge argues that the statements should be excluded as inadmissible hearsay pursuant to KRE 801(c) (the definition of hearsay), which we believe is more properly considered under KRE 802 (the hearsay exclusionary rule). Further, Breckinridge argues that no theory presented by Eldridge can be the basis to admit the statements.

In discussing the arguments of the parties, we will first address the argument by Breckinridge that the mere inclusion of statements in medical records does not make inadmissible evidence admissible. *Johnson v. Commonwealth,* 864 S.W.2d 266 (Ky.1993). Breckinridge correctly cites *Johnson* for the proposition that the mere repetition by Sylvania of Eldridge's statements to the treating physician does make them admissible as statements necessary for medical treatment under KRE 803(4). While this is true, an argument in favor of their admission may not be so easily dismissed if they are properly within another hearsay exception. *See* KRE 805.

The arguments presented by the parties under KRE 803(4) (hearsay exception for statements made for the purpose of medical treatment), and KRE 803(6) (business records exception), will be considered together.

No one would contest the admissibility of the statements if Eldridge had made them directly to the treating physician, as they would have been squarely within KRE 803(4) and therefore admissible. Nor would there be challenge to the testi-

---

3. The hearsay exclusionary rule.

4. Kentucky Rules of Evidence hearsay exceptions.

mony by Eldridge's widow based on her observations of Eldridge, as these would not be hearsay but testimony of the observation of a witness. Lastly, it has been oft recognized that hospital records are admissible as business records and they, when properly certified pursuant to KRS 422.300 to 422.330, have their own exceptions for purposes of authentication under either KRE 902(11) or KRE 902(10) (*See* Lawson, Kentucky Evidence Law Handbook, Fourth Edition, § 7.15) and as an exception to hearsay under KRE 803(6)(A).

■ The issue then becomes whether or not the statements by Sylvania, as Eldridge's widow, repeating what Eldridge told her on the way to the hospital would be admissible. These statements were subsequently made to the treating physician at the hospital by Sylvania for purposes of diagnosis and treatment of Eldridge.

The issue of a third-party relating the statements of an injured person to a treating physician has been considered by our Supreme Court. In *Miller v. Watts*, 436 S.W.2d 515, (Ky.1969), our Supreme Court reaffirmed *Commonwealth, Division of Forestry, Department of Conservation v. Farler*, 391 S.W.2d 371 (Ky.1965), in recognizing that it "held that a patient's history related to a treating doctor by a member of the patient's family was admissible." In fact, *Miller* at 521 expanded the holding in *Farler* by reasoning that:

If an adult may relate history to his treating doctor, so as to make that doctor competent to testify, it seems plain that history related to a treating doctor by a parent, custodian, guardian, or nurse of an infant of tender years must also be admissible. The same reason which makes this type of evidence an exception to the hearsay rule, as regards adults, is applicable with respect to infants. The law reckons that an individual seeking medical relief will speak the truth to his treating doctor-how much more will the law reckon that an anxious and loving mother will speak the truth to a doctor to whom she has entrusted the treatment of her infant child.

We see no reason in the case *sub judice* to bar the statements of Sylvania which repeated the statements of Eldridge to the emergency room doctors for the purpose of medical diagnosis and treatment. Further, while KRE 803(6) is itself an exception to the hearsay rule, statements contained in the medical record are properly admitted if they fit within an exception to the hearsay rule. KRE 805. Therefore, the trial court was correct in admitting, as part of the medical record, the statements of Eldridge's widow under the KRE 803(4) and *Miller*.

■ We now consider the arguments made by Eldridge's estate and Breckinridge under KRE 803(3), referenced as the state of mind exception. This requires a quick review of the rule. KRE 803(3) provides:

Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The statements by Eldridge, while concerning his pain and bodily health, as well as his motive for going to the hospital, cannot be used by his estate to prove Eldridge's belief or memory of the fact remembered or believed. To explain, such statements would be admissible for the limited purpose of explaining Eldridge's

belief as to why he went to the hospital, but not for the purpose of proving that his beliefs, or memory thereof, were factually true. *See Ernst v. Commonwealth,* 160 S.W.3d 744 (Ky.2005); *Crowe v. Commonwealth,* 38 S.W.3d 379 (Ky.2001). Such limited purpose is of no avail to Eldridge's estate and, therefore, the statements are properly excluded as not within this exception. To the extent the trial court held otherwise was error.

█ We now consider the admissibility of the statements under KRE 803(2) as an excited utterance. Eldridge's estate argues, correctly, that Eldridge's statements to Sylvania were excited utterances. KRE 803(2) provides that an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Breckinridge cites *Smith v. Commonwealth,* 788 S.W.2d 266 (Ky.1990), for the proposition that an excited utterance must be made while under stress from nervous excitement and not after reflection or deliberation. In *Smith,* our Supreme Court found that a lapse of 26 minutes between the event that generated the excitement and the utterance was hardly adequate for the declarant to regain composure and fabricate an answer.

█ The admission of a statement by a declarant as an excited utterance turns upon the degree of excitement generated by an event and the time and opportunity for declarant to regain composure in order to fabricate an answer before communication to another. As applied to the facts *sub judice,* we must start with the events earlier in the day at the time of the first visit by Nurse Johnson.

The first visit was routine but for the alleged puncture of the Groshong catheter by the actions of Nurse Johnson. Such actions were certainly a breach of duty, as found by the trial court, and resulted from Nurse Johnson inappropriately using scissors around the catheter site. Regardless, that breach, in and of itself, had little if any effect on the death of Eldridge.[5] It did, however, have an effect on Eldridge's composure and state of mind. Eldridge was concerned about the leaking of the catheter and immediately sent his companion to intercept the departure of Nurse Johnson so that she might correct the situation. Such efforts were to no avail as Nurse Johnson had departed and would not return for several hours. These events were certainly exciting but, taken together, hardly rise to the level necessary to support the admission of an excited utterance.

Eldridge then communicated with the hospital requesting the return of Nurse Johnson to correct the leaking catheter. Upon Nurse Johnson's return, she examined the catheter, discovered it was thrombosed,[6] and attempted to clear the obstructed catheter by flushing it multiple times. This led to immediate health complications, which were manifested as shortness of breath, nervousness, labored breathing, and onset of chest pain. Thereupon, Nurse Johnson advised Eldridge of the need to go to the hospital.

Breckinridge points to the statements of Mr. Miller, companion to Eldridge and present at the time of both visits by Nurse Johnson, that Eldridge was not excited, collected items necessary for his visit to the hospital, called his wife to tell her of his anticipated trip to the hospital, and

---

**5.** However, when it was combined with the events of the second visit by Nurse Johnson, such apparently became the cause of death.

**6.** Thrombosed is a medical term for obstructed.

ultimately met his wife to complete the transport.

Eldridge's estate, to the contrary, offers Sylvania's testimony. First, Sylvania testified that while she was on the telephone with Eldridge, he was nervous, had problems breathing, and was coughing. Second, when Eldridge met Sylvania, while Eldridge did relate facts concerning the visit by Nurse Johnson earlier in the day,[7] he also related the more recent events of the second visit. The second visit occurred approximately 30 minutes before Eldridge met Sylvania and told her of Nurse Johnson's attempts to clear the catheter and the fact that such attempts failed.[8]

It is these latter comments, combined with the testimony of Nurse Johnson, which are of concern in that Eldridge's expert, Dr. Liebert, testified that the breach of the catheter allowed air to enter the catheter tubing which was then flushed into Eldridge's venous system resulting in an air embolism which caused the death of Eldridge. Nurse Johnson testified that upon discovering the leak in the catheter, she should have done nothing and called the doctor, which is in stark contrast to the actions she undertook trying to clear the catheter.[9]

While the leaking of the catheter, however it resulted, set the stage for the introduction of air into Eldridge's venous system, it was not until Nurse Johnson's second visit, during which she attempted to flush the catheter, that Eldridge developed the resultant symptoms,[10] which ulti-

mately generated the excitement. It is the relating of the events of the second visit under the excitement resulting from the symptoms that provide the basis for admitting the statements of Eldridge to Sylvania only minutes later.

While we agree with Breckinridge that outward manifestations of excitement can be a consideration in admitting evidence under the excited utterance exception, we do not agree that such manifestations are dispositive, for we must look to the circumstances that generated the excitement. In short, the mere fact an individual may appear calm does not mean that he is not in mental turmoil and "excited," nor that his capacity for reflection and deliberation is not "stilled." The excitement stilling the capacity for reflection and deliberation is the basis for the application of KRE 803(2). *Mounce v. Commonwealth*, 795 S.W.2d 375, 379 (Ky.1990). *See also Preston v. Commonwealth*, 406 S.W.2d 398, 401 (Ky.1966), (*quoting* 6 J. Wigmore on Evidence, § 1747 at 136 (1976)).

The evidence before that trial court as to the level of stress and excitement of Eldridge was certainly controverted. It was for the trial court to determine which facts were to be believed and whether they supported the level of excitement necessary for application of KRE 803(2). On appeal, we review the facts found by the trial court under a clearly erroneous standard. Then we evaluate whether the court's decision to admit the evidence on the basis of those facts exceeded its discre-

---

7. Nurse Johnson earlier in the day had used scissors around the Groshong catheter site, cut the catheter tubing, Eldridge's clothing became wet, and such necessitated a second visit by Nurse Johnson.

8. The attempts of Nurse Johnson to clear the catheter were also testified to by Mr. Miller.

9. The trial court found that Nurse Johnson's actions trying to clear the catheter resulted in air being flushed into Eldridge's venous system.

10. Labored breathing, shortness of breath, nervousness and onset of chest pain.

tion. CR 52.01, *A & A Mechanical* at 509; *Garlock* at 393, *Goodyear Tire and Rubber Co.* at 577, *English* at 945. Having done so, we find that the factual findings of the trial court were not clearly erroneous and that it did not abuse its discretion in admitting the statements as excited utterances based on those facts.

Lastly we consider whether the statements in question would be admissible under KRE 803(1), the present sense impression exception to the hearsay rule. KRE 803(1) states that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." It is uncontroverted that the statements which were made by Eldridge to Sylvania did not occur while perceiving the event. Thus, the question of admission becomes one of whether the statements were within the "immediately thereafter" period.

The admission of the statements would appear questionable under our case law. *Fields v. Commonwealth,* 12 S.W.3d 275 (Ky.2000); *Young v. Commonwealth,* 50 S.W.3d 148 (Ky.2001). Regardless, our decision that the evidence would be admissible under either KRE 803(4) and *Miller* or KRE 803(2) makes further analysis under KRE 803(1) (present sense impression) superfluous.

The judgment of the Leslie Circuit Court, Hon. Cletus Miracle, Judge, is hereby affirmed.

ALL CONCUR.