**O'DONNELL–USEN FISHERIES, et al., Plaintiffs,**

**v.**

**Andrew BATHURST, et al., Defendants.**

**Civ. A. No. 84–4117–K.**

United States District Court,
D. Massachusetts.

June 29, 1987.

---

Marie Lefton, Goodwin, Proctor & Hoar, Boston, Mass., for plaintiffs.

Richard Kydd, Kneeland, Lydd & Handy, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This case involves a Hull, War Risk and Strikes insurance policy ("the policy") subscribed by defendant Lloyd's underwriters ("Underwriters") which covered the F/V Ann C. Spencer. The Ann C. Spencer was destroyed by fire on May 29, 1982. Plaintiffs submitted a claim for their loss, and defendants' refusal to tender any payment on the policy is the subject of this action. Before the court are defendants' motion for summary judgment, defendants' motion to amend their memorandum of law in support of their summary judgment motion, and plaintiffs' motion for partial summary judgment.

### I.

A motion for summary judgment should be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding the motion, a court must examine the record and draw all inferences therefrom in the light most favorable to the motion's opponent. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The court's role is not to weigh the evidence but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to make a showing sufficient to support a finding of the existence of an element essential to his case and on which he will bear the burden of proof at trial, entry of summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II.

The following facts are undisputed. Plaintiffs obtained a Hull, War Risk and Strikes policy on the Ann C. Spencer which was subscribed by the defendant Underwriters and placed through Mariners Insurance Agency ("Mariners") in the United States and Lowndes Lambert Marine Ltd. ("Lowndes") in London. The ship, which was not covered by ordinary Hull insurance, was destroyed by fire on May 29, 1982. On January 26, 1983, a Canadian Preliminary Inquiry found probable cause to charge Richard J. Priemski with arson of the Ann C. Spencer, for which he was later tried and acquitted.

Plaintiffs first notified Mariners of the May 29, 1982 fire during a February 23, 1983 telephone conversation between Samuel Tucker of Mariners and Arnold Edelstone of plaintiff O'Donnell-Usen Fisheries. Plaintiffs gave written notice of the fire in a letter to Mariners dated March 1, 1983. Mariners notified Lowndes of the fire in a letter dated March 11, 1983. The Underwriters first received notice of the fire on March 18, 1983, when a Lowndes representative showed the March 11 letter to Charles Wynne of Lloyd's.

The insurance policy at issue requires that the Underwriters receive prompt notice of any loss.

## III.

■ Defendants have moved for summary judgment on the ground that plaintiffs failed to provide the Underwriters with timely notice of their claim as the policy requires. Plaintiffs have opposed the motion, contending that their delayed notice was reasonable under the circumstances of this case because they did not have sufficient reason to believe that arson was a probable cause of the fire until January 26, 1983, when the Canadian Preliminary Inquiry charged Richard J. Priemski with arson, and because they were not aware of the possibility that the loss was covered under the policy until the telephone conversation with Samuel Tucker of Mariners on February 23, 1983. Plaintiffs further contend that they had never received a copy of the policy terms until Tucker sent them a copy of certain of its provisions on February 23, and that they never saw a full copy of the policy, including the notice provisions, until Tucker's deposition. Finally, plaintiffs contend that even if their delay was not reasonable, defendants cannot avoid the policy because they were not prejudiced by the delay. *See Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 409 N.E.2d 185 (1980).

Defendants respond that plaintiffs' delay was unreasonable because they should have contacted Mariners at the time of the fire to inquire whether there was coverage and to obtain a copy of the policy, and should have been aware of the possibility of arson during the investigation that led to the charge handed down in January 1983. Defendants further contend that Mariners was plaintiffs' insurance broker rather than defendants' agent and therefore that the Underwriters cannot be charged with Mariners' failure to deliver a copy of the policy to plaintiffs. Defendants also raise genuine issues as to whether they were prejudiced by the delay.

As the defendants' responses make clear, there are genuine disputes as to the reasonableness of plaintiffs' delay in notifying defendants of their claim and whether defendants were prejudiced from the delay. Summary judgment on the ground of un-timely notice is therefore clearly inappropriate. *See Sheehan v. Aetna Life Ins. Co.*, 296 Mass. 535, 541, 6 N.E.2d 777, 780 (1937) (whether plaintiff exercised due diligence in giving notice is question of fact). Defendants motion for summary judgment must be denied.

## IV.

■ Plaintiffs have moved for partial summary judgment on the issue whether the policy provides coverage for loss caused by arson. Defendants have opposed the motion, contending that genuine issues of fact exist as to whether the fire was caused by arson and, if it was caused by arson, whether the fire was set by a crew member and therefore is precluded from coverage under the war risk policy as an act of barratry of a mariner. Defendants further contend that any fire, regardless of its origin, is not covered by the policy and that "the reading of the War Risks policy and its application to the facts of the alleged loss are questions of fact for the jury to decide." Defendants' Memorandum in Opposition (Docket No. 59) at 2.

Two types of marine insurance are to be distinguished: ordinary marine and war risk. *See* G. Gilmore & C. Black, *The Law of Admiralty* 72 (2d ed. 1975). The policy at issue is a War Risks and Strikes policy. The policy states:

> This insurance is only to cover War and Strikes & c. risks as per American Institute War Risk and Strikes and Automatic Termination and Cancellation Clause (Time)—Hulls—(18th January, 1970)....

Thus, by its terms the policy is to be read in light of the 1970 American Institute War Risks and Strikes Clauses ("War Risks Clauses") which it incorporates. The War Risks Clauses state that they are "For Attachment to American Institute Hull Clauses" and thus must in turn be read in light of the American Institute Hull Clauses ("Hull Clauses") which they incorporate.

The Hull Clauses provide "ordinary" marine insurance. They provide coverage for an extensive list of perils but, in a WAR, STRIKES AND RELATED EXCLUSIONS clause, preclude coverage for specified con-

ditions related to war and labor strikes. In order to be insured for these war and strike risks, the vessel must be covered by a war risk policy. The War Risks Clauses cover the risks, and only the risks, that are precluded from coverage under a Hull policy by its WAR, STRIKES AND RELATED EXCLUSIONS clause. *See* G. Gilmore & C. Black, *supra*, at 72; N. Healy & D. Sharpe, *Admiralty* 650 (1974). As stated in the War Risks Clauses:

> This insurance, subject to the exclusions set forth herein, covers only those risks which would be covered by [the Hull Clauses] in the absence of the WAR, STRIKES AND RELATED EXCLU-SIONS clause contained therein but which are excluded thereby....

Thus, with possible exceptions illustrated by the barratry provisions considered in Part V below, the two types of policies dovetail so that together they provide total coverage, without overlap, for all the perils listed in the Hull Clauses.

This method of dovetailed, non-over-lapping coverage is not a universal practice of insurance marketing. Some types of insurance are offered in the market through the use of standard forms that include two separate coverages that come close to being mutually exclusive but nevertheless overlap to some degree. That method of marketing is illustrated in auto-mobile insurance forms, which have been in common use for decades, though not for as long as the most common marine insurance forms. The "comprehensive" coverage in such automobile insurance policy forms ap-plies to "loss caused other than by colli-sion," but for "the purpose of [comprehen-sive] coverage ... loss caused by ... fire ... shall not be deemed to be loss caused by collision." Insurance Information Insti-tute, Family Combination Automobile Poli-cy Form, (Rev. 1–1–63) Coverage D. Thus, when a fire causes a collision, "comprehen-sive" coverage applies to the entire loss even though that part of the loss resulting from the collision is also within the "colli-sion" coverage. *E.g., Tonkin v. Califor-nia Ins. Co.,* 294 N.Y. 326, 62 N.E.2d 215, 160 A.L.R. 944 (1945).

To determine which of these contrasting methods of marketing has been used in a particular case, a court is guided primarily by the manifested meaning of the insur-ance contract itself. In the present case, the provisions of the Hull Clauses and the War Risks Clauses make clear that (with possible exceptions illustrated by barratry provisions, discussed in Part V below) these two sets of clauses dovetail. The Hull Clauses provide extensive coverage but preclude coverage for certain risks, listed in the WAR, STRIKES AND RE-LATED EXCLUSIONS clause; the War Risks Clauses provide coverage for those risks which are precluded from coverage under the Hull Clauses because they are listed in the WAR, STRIKES AND RE-LATED EXCLUSIONS clause. There is no overlap in the coverage—the WAR, STRIKES AND RELATED EXCLUSIONS clause carves out certain risks from the Hull Clauses and the War Risks Clauses provide coverage for the risks that the WAR, STRIKES AND RELATED EXCLU-SIONS clause carved out. *See* G. Gilmore & C. Black, *supra*, at 72; Haehl, *The Hull Policy: Coverages and Exclusions Fre-quently Employed,* 41 Tul.L.Rev. 277, 279 (1967).

Although plaintiffs did not have a Hull Clauses policy on the Ann C. Spencer, their war risk policy nevertheless must be read to provide coverage for the risks that a Hull Clauses policy would have covered but for the preclusion from coverage under the Hull Clauses due to the WAR, STRIKES AND RELATED EXCLUSIONS clause, be-cause their war risk policy expressly covers those risks. *Cf.* Haehl, *supra*, at 280. Thus, an analysis of what is covered by plaintiffs' policy must begin with an exami-nation of what is precluded from coverage by the WAR, STRIKES AND RELATED EXCLUSIONS clause of the Hull Clauses.

The WAR, STRIKES AND RELATED EXCLUSIONS clause of the Hull Clauses states:

> The following conditions shall be para-mount and shall supersede and nullify any contrary provisions of the Policy.

This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

. . . .

(f) . . . malicious acts or vandalism. . . .

American Institute Hull Clauses (Jan. 18, 1970) lines 264–74. The phrase "shall supersede and nullify any contrary provisions of the Policy" is a clear expression that the Hull Clauses coverage does not extend to "any loss . . . resulting from . . . malicious acts or vandalism." Thus, this clause precludes coverage for "malicious acts or vandalism" under the Hull Clauses, and the dovetailed War Risks Clauses necessarily include coverage for these risks. Therefore, if arson is considered to be a "malicious act[ ] or vandalism," it is plainly included in the War Risks Clauses, barring some other theory for precluding coverage for arson from the War Risks Clauses.

Defendants have not contested that arson is a malicious act or vandalism, but have instead contended that all fires, regardless of their origin, are covered by the PERILS clause of the Hull Clauses and therefore cannot be covered by the plaintiffs' war risk policy. The PERILS clause of the Hull Clauses lists a number of risks (of which fire is one) which are included for coverage, but expressly precludes coverage for "such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon." Thus, coverage for the risks listed in the PERILS clause is not absolute, but is subject to the preclusions from coverage listed in other provisions of the Hull Clauses. One of the provisions of the Hull Clauses that lists preclusions from coverage is the WAR, STRIKES AND RELATED EXCLUSIONS clause, which expressly states that its "conditions shall be paramount and shall supersede and nullify any contrary provisions of this Policy." The terms of the Hull Clauses are thus absolutely clear: the risks listed in the PERILS clause are included for coverage unless other provisions in the policy preclude their coverage, and the preclusions from coverage listed in the WAR, STRIKES AND RELATED EXCLUSIONS clause supersede and nullify any contrary provisions of the policy, including the PER-

ILS clause. Thus, if an event falls within the ambit of both the PERILS clause and the WAR, STRIKES AND RELATED EXCLUSIONS clause, the preclusion from coverage of the WAR, STRIKES AND RELATED EXCLUSIONS clause supersedes the PERILS clause and the event is not covered by the Hull policy. *See* G. Gilmore & C. Black, *supra*, at 72 ("The perils clause in the ordinary marine policy does not mean what it says, but covers only those risks which are not knocked out by the [WAR, STRIKES AND RELATED EXCLUSIONS] clause."); N. Healy & D. Sharpe, *supra*, at 650.

Accordingly, although the PERILS clause lists fire among the risks included for coverage, it does not provide coverage for all fires, but only for fires that are not precluded from coverage by other provisions of the policy. The sole case cited by defendants in support of their contention that fire perils include all fires, regardless of their origin and regardless of whether they are deliberately set, *Schiffshypothekenbank Zu Luebeck AG v. Compton (The "Alexion Hope")*, [1987] 1 Lloyd's Rep. 60 (Q.B.1986), is not persuasive in this context because the insurers in that case conceded that the policy at issue, which covered both ordinary marine perils and war risks, included a deliberately set fire not started by or with the connivance of the shipowners.

Because the WAR, STRIKES AND RELATED EXCLUSIONS clause precludes coverage for "any loss, damage or expense caused by, resulting from, or incurred as a consequence of . . . malicious acts or vandalism," I conclude that when malicious acts or vandalism occur in the form of arson the loss is precluded from coverage by the Hull Clauses. *Cf. St. John v. American Mut. Fire & Marine Ins. Col*, 11 N.Y. 516 (1854) (vessel's policy covered fire but precluded coverage for losses from steam boiler explosions; fire caused by steam boiler explosion held not covered). Because plaintiffs' war risk policy includes coverage for the risks precluded from coverage under the Hull Clauses because of the WAR, STRIKES AND RELATED EXCLUSIONS clause, I conclude that plain-

tiffs' policy includes coverage for losses caused by arson.

Defendants argue that the interpretation of the contract is a question of fact for the jury and cannot be resolved on plaintiffs' motion for partial summary judgment. This argument cannot be sustained:

> Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court.... Where the wording of the contract is unambiguous, the contract must be enforced according to its terms. It is only where the contract contains ambiguities that a question of fact for the jury is presented.

*Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir.1981). The conclusions stated above do not involve the interpretation of any ambiguous terms of the contract and do not present a question of fact for the jury. Plaintiffs' motion for summary judgment on the war risk policy's inclusion of arson will be granted.

### V.

In plaintiffs' reply memorandum in support of their motion, they raised an additional ground on which they contend they are entitled to summary judgment. Plaintiffs contend that although barratry is included in the PERILS clause of the Hull Clauses, barratry that takes the form of arson is precluded from coverage under a Hull Clauses policy as a "malicious act[ ] or vandalism." Plaintiffs argue that the preclusion of "malicious acts or vandalism" in the WAR, STRIKES AND RELATED EXCLUSIONS clause supersedes the inclusion of all risks listed in the PERILS clause, barratry as well as fire.

This issue is not as easily resolved as the issue presented by fire perils, however. Under one definition of barratry, the term "includes every wrongful act wilfully committed by the master or crew to the prejudice of the owner." *Nautilus Virgin Charters, Inc. v. Edinburgh Ins. Co.*, 510 F.Supp. 1092, 1095 (D.Md.) (citation omitted), *aff'd*, 673 F.2d 1314 (1981), *cert. denied*, 456 U.S. 945, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982). If barratry is defined to be only wrongful acts by the master or mariners which are wilfully committed, all the events that fall within the ambit of barratry could also be categorized as "malicious acts or vandalism," and the preclusion of coverage for "malicious acts or vandalism" would wholly eliminate coverage for barratry in a Hull Clauses policy. On the other hand, if barratry is defined to be all breaches of duty by a master or mariners, including but not limited to wilfully committed wrongs, then the contract could be interpreted as including coverage for non-wilful or non-malicious barratry but precluding coverage for malicious or vandalous acts by a master or mariner. Because of this ambiguity in the definition of barratry, I conclude that the manifested intent of the parties as to coverage for barratry is not as clear as it is for arson that does not involve barratry. I conclude that it is therefore appropriate for me to deny plaintiffs' motion for summary judgment and defer ruling on the debatable questions presented by this issue. This conclusion may be especially appropriate in light of the dispute of fact as to whether the person accused of arson was a mariner at the time of the fire and therefore whether barratry will be an issue in this case.

### VI.

Although defendants' answer denied that arson was the cause of the fire to the Ann C. Spencer, *see* Amended Complaint para. 19; Answer para. 19, in their memorandum of law in support of their motion for summary judgment, defendants represented that they did not dispute that arson was the cause of the fire. Two weeks later, defendants moved to amend the memorandum to delete that representation. Plaintiffs have opposed the motion on the ground that they would be prejudiced by the amendment because it would reintroduce a dispute of fact into this controversy.

I conclude that this claim of prejudice should not preclude the amendment of the memorandum to reflect the position which defendants had asserted in their answer. As to plaintiffs' contention that they should

be permitted to use the original memorandum as an evidentiary admission to be admitted at trial, I conclude that I should defer ruling on their request until the time of or immediately preceding trial.

## VII.

As part of their motion for partial summary judgment, plaintiffs moved that, if the court ruled that defendants could not amend their memorandum of law in support of their motion for summary judgment, they should be granted summary judgment on the issue whether the policy covers their claim. Because defendants' motion to amend their memorandum will be allowed, a dispute of fact exists as to the origin of the fire aboard the Ann C. Spencer and that part of plaintiffs' motion for summary judgment that sought a ruling that the policy covered their claim must be denied.

## ORDER

For the reasons stated in the foregoing Memorandum, it is ORDERED

Defendants' motion for summary judgment is denied.

Plaintiffs' motion for partial summary judgment is allowed insofar as it seeks a ruling that losses caused by arson are covered by their policy with defendants. In all other respects, the motion is denied. ·

Defendants' motion to amend their memorandum of law in support of their motion for summary judgment is granted.